# RABINOWITZ, LUBETKIN & TULLY, L.L.C.

### ATTORNEYS AT LAW

JONATHAN I. RABINOWITZ*
JAY L. LUBETKIN∆
MARY ELLEN TULLY, RETIRED
BARRY J. ROY*□
JEFFREY A. COOPER*
HENRY M. KARWOWSKI*
JOHN J. HARMON*

293 EISENHOWER PARKWAY • SUITE 100
LIVINGSTON, NEW JERSEY 07039
TELEPHONE: (973) 597-9100
FACSIMILE: (973) 597-9119
WWW.RLTLAWFIRM.COM

* MEMBER NJ & NY BARS
∆ MEMBER NJ & GA BARS
□ MEMBER MA BAR

May 23, 2023

**Via ECF**
Honorable Stacey L. Meisel
United States Bankruptcy Court
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, NJ 07102

> Re:   **In re Negita**
> **Case No. 23-12365 (SLM)**
> **Initial Status Conference: May 30, 2023 at 11:00 am.**

Dear Judge Meisel:

This office represents the Debtors in connection with regard to the above referenced SubChapter V Chapter 11 case. Please allow this letter to supplement the Initial Status Report filed by this office on May 16, 2023.

Please note that since the filing of the Initial Status Report, the following notable events have occurred:

1) On May 22, 2023, the Honorable Lewis J. Liman of the United States District Court, Southern District of New York, entered a mediation order requiring the parties to the SDNY action, including the Debtors and their largest creditors, to attend a mandatory mediation session on either June 7, 2023 or June 13, 2023; and

2) On May 22, 2023, Counsel for the Debtors' largest creditors filed a Motion for an Order Commencing Criminal Contempt Proceedings Against Yasuko Negita, Masahiko Negita, Miho Maki and Kenji Kora Pursuant to 18 U.S.C. § 401 and/or Fed R. Crim. Pro. 42 for Continuous Contempt of Orders of the Court (the "Contempt Motion")[1]. A copy of the Motion is attached for Your Honor's reference.

---

[1] A hearing date for the Contempt Motion has yet to be scheduled.

Honorable Stacey L. Meisel
May 23, 2023
Page 2

Respectfully submitted,

RABINOWITZ, LUBETKIN & TULLY, L.L.C.

Barry J. Roy

BJR:jc
Enclosures

cc:    Jeffrey A. Cooper, Esq.
       Nancy Isaacson, SubChapter V Trustee
       Jeffrey M. Traurig, Esq.

F:\Client_Files\N-Z\Negita\Letters\Meisel.doc

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORNRAT KEAWSRI, SACHINA NAGAE, TAKAYUKI SEKIYA, SIWAPON TOPON, PIMPARAT KETCHATROT, THIRATHAM RAKSUK, PARICHAT KONGTUK, TANON LEECHOT, THANATHARN KULAPTIP, WANWISA NAKWIROT, NATCHA NATATPISIT, and PARADA MONGKOLKAJIT, *Plaintiffs,* v. RAMEN-YA INC., Y&S INTERNATIONAL CORP. d/b/a RAMEN-YA, MIHO MAKI, MASAHIKO NEGITA, TOSHIHITO KOBAYASHI, KENJI KORA and YASUKO NEGITA, *Defendants.* | INDEX NO. 17-cv-2406 (LJL)(OTW) NOTICE OF MOTION FOR AN ORDER COMMENCING CRIMINAL CONTEMPT PROCEEDINGS AGAINST YASUKO NEGITA, MASAHIKO NEGITA, MIHO MAKI AND KENJI KORA PURSUANT TO 18 U.S.C. § 401 AND/OR FED. R. CRIM. PRO. 42 FOR CONTINUOUS CONTEMPT OF ORDERS OF THE COURT |

Please take notice that, upon the declaration of Florence Rostami dated May 22, 2023, the memorandum of law, and all prior pleadings and proceedings herein, Plaintiffs/Judgment Creditors Ornrat Keawsri, Sachina Nagae, Takayuki Sekiya, Siwapon Topon, Pimparat Ketchatrot, Thiratham Raksuk, Parichat Kongtuk, Tanon Leechot, Thanatharn Kulaptip, Wanwisa Nakwirot, Natcha Natatpisit, and Parada Mongkolkajit (collectively, "Judgment Creditors"), through their undersigned counsel, hereby move the Court before the Honorable Lewis J. Liman, U.S.D.J., at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007, on such day and time as counsel may be heard, for (i) an order that proceedings be commenced pursuant to 18 U.S.C. § 401 and/or Fed. R. Crim. P. 42 against Defendants/Judgment Debtors Yasuko Negita, Masahiko Negita, and Miho Maki in their individual capacity and in their capacity as owners, directors, officers or agents of Defendant/Judgment Debtor Ramen-Ya Inc. and against Kenji Kora in his individual capacity and in his capacity as owner, director, officer, or agent of Y&S International Corp. for adjudication

that they are in *criminal contempt* of the Court because (a) of *their continued disobedience of and refusal to comply* with the lawful orders and commands of this Court with respect to post-judgment discovery dated August 25, 2022 [DE 523] and September 30, 2022 [DE 560] and as stated by the Court at the hearings held before the Court on September 27 and November 23, 2022 (collectively, "Orders and Commands"), (b) of their blatant attempts to hide their assets from Judgement Creditors, and (c) for their making of false and/or materially misleading statements and representations to this Court, with sanctions for such criminal contempt to include *imprisonment for a definite term* as provided by law; and (ii) an order providing such other and further relief as the Court deems is just and proper.

Dated: New York, New York
　　　　May 22, 2023

　　　　　　　　　　　　　　　　　　*Respectfully submitted.*

　　　　　　　　　　　　　　　　　　FLORENCE ROSTAMI LAW, LLC

　　　　　　　　　　　　　　　　　　By: __*/s/ Florence Rostami*___
　　　　　　　　　　　　　　　　　　Florence Rostami
　　　　　　　　　　　　　　　　　　Neal Haber
　　　　　　　　　　　　　　　　　　frostami@rostamilaw.com
　　　　　　　　　　　　　　　　　　nhaber@rostamilaw.com
　　　　　　　　　　　　　　　　　　420 Lexington Avenue, Suite 1402
　　　　　　　　　　　　　　　　　　New York, New York 10170
　　　　　　　　　　　　　　　　　　Telephone (212) 209-3962
　　　　　　　　　　　　　　　　　　Fax (212) 209-7100
　　　　　　　　　　　　　　　　　　*Attorneys for Judgment Creditors*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORNRAT KEAWSRI, SACHINA NAGAE, TAKAYUKI SEKIYA, SIWAPON TOPON, PIMPARAT KETCHATROT, THIRATHAM RAKSUK, PARICHAT KONGTUK, TANON LEECHOT, THANATHARN KULAPTIP, WANWISA NAKWIROT, NATCHA NATATPISIT, and PARADA MONGKOLKAJIT, <br><br> *Plaintiffs,* <br> v. <br><br> RAMEN-YA INC., Y&S INTERNATIONAL CORP. d/b/a RAMEN-YA, MIHO MAKI, MASAHIKO NEGITA, TOSHIHITO KOBAYASHI, KENJI KORA and YASUKO NEGITA, <br><br> *Defendants.* | INDEX NO. 17-cv-02406 (LJL)(OTW) <br><br> DECLARATION OF FLORENCE ROSTAMI IN SUPPORT OF JUDGMENT CREDITORS' MOTION SEEKING AN ORDER COMMENCING CRIMINAL CONTEMPT PROCEEDINGS AGAINST YASUKO NEGITA, MASAHIKO NEGITA, MIHO MAKI, AND KENJI KORA PURSUANT TO 18 U.S.C. § 401 AND/OR FED. R. CRIM. PRO. 42 FOR CONTINUOUS CONTEMPT OF THE COURT |

Under the penalty of perjury pursuant to the laws of the United States I, Florence Rostami, state as follows:

1. I am a member of Florence Rostami Law, LLC.

2. I am one of the lead counsels on this case and as such familiar with all facts related to this motion.

3. I submit this declaration in support of the motion by each of the Plaintiffs in this action (hereinafter "Plaintiffs" or "Judgment Creditors") pursuant to 18 U.S.C. § 401, or in the alternative Fed.R.Crim.P. 42, for an order commencing proceedings for criminal contempt against Yasuko Negita ("Yasuko"), Masahiko Negita ("Negita"), and Miho Maki ("Maki") in their individual capacity and in their capacity as owners, directors, officers or agents of Defendant/Judgment Debtor Ramen-Ya Inc. ("RYI") and Kenji Kora ("Kora") in his individual capacity and in his capacity as owner, director, officer, or agent of Y&S International Corp.

("Y&S") (each a "Judgment Debtor") for adjudication that they are in *criminal contempt* of the Court because (a) of *their continued disobedience of and refusal to comply* with the lawful orders and commands of this Court with respect to post-judgment discovery dated August 25, 2022 [DE 523] and September 30, 2022 [DE 560] and as stated by the Court at the hearings held before the Court on September 27 and November 23, 2022 (collectively, "Orders and Commands"), (b) of their blatant attempts to hide their assets from Judgement Creditors, and (c) for their making of false and/or materially misleading statements and representations to this Court, with sanctions for such criminal contempt to include *imprisonment for a definite term* as provided by law; and (ii) an order providing such other and further relief as the Court deems is just and proper.

4.      In contravention of this Court's repeated orders for disclosure of their assets, Yasuko, Masahiko, Maki, and Kora have misrepresented facts and lied under oath about the existence and location of their assets; and, in addition, hid their assets in bank accounts in the name of Maki's daughter, Haruna Maki ("Haruna"), with Kil S. Jung, and as loans to their relatives.

5.      With the assistance of their bankruptcy counsel, Barry Roy ("Roy") and Jeffrey Cooper ("Cooper"), Yasuko and Masahiko derailed Judgment Creditors' efforts to enforce their judgment by first failing to disclose all of their assets even though prior to filing the bankruptcy the Negitas were subject to several standing orders to do so. The Negitas' bankruptcy counsel did not direct them to disclose a second account Yasuko owned with Kiraboshi Bank, the $106,000 loan from Yasuko to her niece given in August 2022, and monies hidden in Haruna's bank accounts and with Kil S. Jung.

6.      On May 18 and 19, 2022, a newly appearing counsel for Maki and RYI brazenly threatened to further derail Judgment Creditors' enforcement efforts by filing bankruptcy on behalf of Maki and RYI when he knows or should know that filing such bankruptcies will have no effect on the judgment against Maki and RYI since in the Second Circuit—a judgment finding that a

2

violation of the Fair Labor Standards Act ("FLSA") has occurred is not dischargeable.

7.      To date, only through significant costs and their due diligence, Judgment Creditors have discovered some of Judgment Debtors' assets but strongly believe that, based on Judgment Debtors' contumacious conduct both prior to and after the Judgment [DE 514] was entered in this matter, Judgment Debtors continue to conceal the existence of substantial additional assets that must be applied to satisfy the Judgment.

8.      In sum, it is absolutely clear that Yasuko, Negita, Maki, and Kora have no respect for the rule of law, this Court, and Judgment Creditors. They have made a mockery of the legal process. If employers who take advantage of vulnerable employees can play the justice system, then the protections provided by the FLSA and similar state laws will be futile and ineffective.

9.      Monetary fines have absolutely no impact whatsoever on these individuals. On September 30, 2022, the Court found Yasuko, Negita, Maki, RYI, and Y&S in criminal contempt and ordered them to pay $5,000 each and Y&S and Kora to pay $1,000 for their failure to respond to post-judgment discovery. [DE 560] However, they paid the fines but were not deterred and continued to hide their assets. Only a definite prison term will be a just punishment for their conduct.

10.     To be sure, in this motion, Plaintiffs are solely requesting this Court to hold these four individuals accountable for their material misleading statements and corrupt conduct. By this motion, Plaintiffs *are not seeking* any information or documents from Yasuko, Negita, Maki, and/or Kora regarding their assets. Plaintiffs have other means available to them to continue their investigation of the assets these individuals have hidden, but by this motion Plaintiffs seek solely to obtain punishment of these Judgment Debtors for their obdurate conduct. As the Court is aware, Yasuko and Negita ("the Negitas") have filed a Voluntary Petition for Bankruptcy under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

District of New Jersey (the "Bankruptcy Proceeding"). This motion does not address or seek

criminal contempt for any conduct by Yasuko and Negita in the Bankruptcy Proceeding, but rather

is directed at their conduct, as well as the conduct of Maki and Kora, with respect to matters before

this Court.

## FACTS

### *Post Judgment Discovery*

11.     In an Opinion & Order dated August 10, 2021 [DE 419], this Court found that

Negita, Maki, RYI, Y&S, and Kora are jointly and severally liable to Plaintiffs for damages and

penalties for violations of the FLSA, the New York Labor Law, and the Hospitality Wage Order

(the "Wage Payment Laws"), including liquidated damages, and for Plaintiffs' attorneys' fees, and

post-judgment interest (collectively, the "Damages"). In an oral decision made on July 11, 2022,

this Court found that Yasuko is also jointly and severally liable to all Plaintiffs for Damages.

12.     On July 15, 2022, Plaintiffs filed a motion seeking a Judgment for the Damages to

be awarded to them--approximately $680,000 in damages and $1.2 million in legal fees and costs,

and post-judgment interest. [DE 499, 500, 501]

13.     On July 29, 2022, the Court granted an *ex parte* motion for attachment of then

known assets of some of the Judgement Debtors [DE 505] which the Court later confirmed on

August 10, 2022 [DE 515] after a hearing was held on notice to Judgment Debtors.

14.     Judgment Debtors had full notice of the orders to preserve and not dissipate assets.

Kil S. Jung was also informed of this order. On August 2, 2022, I emailed a copy of the order [DE

505] to Kil S. Jung and informed him that the Court has found in favor of Plaintiffs and issued the

order of attachment. [A copy of the email is annexed hereto as Exhibit 1. Thus, Kil S. Jung had

knowledge of the Judgment and the order prohibiting transfer of Judgment Debtors' assets.]

15.     On August 8, 2022, the Court awarded $687,825.81 in damages and penalties,

4

$1,110,807.82 in attorney's fees and costs, as well as any post judgment interest to Judgment

Creditors. [DE 512] A judgment for this amount was entered by the Clerk of Court for these

amounts on August 10, 2022 (hereinafter the "Judgment"). [DE 514]

16.    On August 10, 2022, the Court ordered that "Judgment Creditors motion for leave

to examine Defendants with respect to the nature, extent and location of their assets is granted, and

Defendants are ordered to appear at the office of Judgment Creditors' counsel for such examination

on or before August 23, 2022." [DE 515]

17.    On August 15, 2022, Judgment Creditors' counsel served on each of these four

individuals and the two corporations subpoenas *ad testificandum* and subpoenas *duces tecum*

(collectively, "Subpoenas") [DE 531-2 and DE 531-3] compelling their attendance and requiring

them to produce documents relevant to the ascertainment of the nature, extent, and location of their

assets, whether within or outside the State of New York.

18.    The Subpoenas served on Yasuko, Negita, Maki, and Kora required, *inter alia*, the

production of documents regarding their assets including bank account statements, fund transfer

records, real estate assets, tangible (including cash) and intangible assets, list of people who held

their assets and/or owed money to each of them, and their business operations.

19.    The Subpoenas served on RYI and Y&S required, *inter alia*, the production of

documents regarding their assets including bank account statements, fund transfer records, tangible

and intangible assets, business operations, and loan agreements.

### *Kora hides Y&S's assets.*

20.    Kora materially misrepresented information about his assets.

21.    On August 22, 2022, Kora appeared for a post-judgment deposition at which he

produced some documents in response to the Subpoenas served on Kora and Y&S [DE 531-3] but

failed to disclose the significant payment he had received from Kil S. Jung (the accountant for

RYI, Y&S, Yasuko, Negita, Kora, and Kuraku New York Inc. ("Kuraku"), a corporation in which

Yasuko and Maki are owners) on July 13, 2022. This payment was made to Kora eight days after

Jung testified before this Court on matters related to Yasuko and financial matters related to

Kuraku, and two days after this Court issued an oral judgment determining that Yasuko is an

"employer" and is therefore also jointly and severally liable for the Judgment.

      22.    Judgment Creditors recently learned that in conspiracy with the Negitas and Maki,

Kora caused Y&S to hide at the minimum $149,900 of its funds with Kil S. Jung to thwart

Judgment Creditors. At least on one occasion, on December 22, 2021, Y&S issued a check payable

to Kil S. Jung for $149,900.

      23.    On May 17, 2023, Nancy Isaacson, the Chapter 5 trustee of the Bankruptcy

Proceeding, called me to relay a message from the Negitas' counsel. She said that the Negitas

admit that payments made by them on behalf of RYI and Y&S to Kil S. Jung [DE 633-26 and 633-

27] and an additional $60,000 from Haruna's bank accounts to Kil S. Jung were "fraudulent

transfers." No doubt, the Negitas, Maki, and Kora intended to hide the cash from the Judgment

Creditors since they did not disclose the fraudulent nature of these transfers until Kil S. Jung was

compelled to testify at the hearing held on May 18, 2023. [Annexed as Exhibit 2 is my email to

Kil S. Jung dated May 15, 2023 at 5:17 pm forwarding to him the Court's order that he attend and

be prepared to testify at the hearing on May 18, 2023.]

      24.    At his August 22, 2022 deposition, and in response to the subpoena served on him,

Kora failed to disclose that on July 13, 2022, he had received a payment of $149,900 from Kil S.

Jung. [Annexed hereto as Exhibit 3 is a copy of the check payable to Kora.]

      25.    To date, despite repeated requests, Kora has failed to provide any information or

documents regarding two checks written on Y&S account with Chase Bank, one for $100,000 and

the other for $10,000, leading Judgment Creditors to believe these payments were made to further

hide Y&S's assets. Annexed hereto as Exhibit 4 are emails dated August 22, October 5, November 2, 2022, and April 5, 2023 to Kora's counsel requesting this information.

26.     Kil S. Jung was assisting Kora to hide, at the very least, Y&S assets from the reach of Judgment Creditors. The full amount of the funds Kora (and the Negitas and Maki) has hidden with Kil S. Jung will require a complete forensic accounting of Kil S. Jung's books and records. As a shareholder of Y&S, Kora was not entitled to this distribution pursuant to Business Corporation Law § 510(a).

27.     For this willful subterfuge to hide Y&S's assets, Kora was a party to the conspiracy to hide assets that should have been provided to Judgment Creditors toward satisfaction of the Judgment, and accordingly he should be held in criminal contempt and should be subject to a definitive prison term.

### *Yasuko, Negita, and Maki made materially false statements about and conspired to hide their assets and the assets of RYI and Y&S.*

28.     In the proceedings held in this Court and, in case of Yasuko and Negita in the Bankruptcy Court, Yasuko, Negita, and Maki have made materially false statements about their assets and have misled this Court. At great expense, Judgment Creditors have discovered some of their assets.

29.     In their depositions held in October and November 2019, Yasuko, Negita, and Miho failed to disclose the existence of Kuraku when asked if they own any interest in businesses other than RYI. Judgment Creditors serendipitously found out about Kuraku, and during the hearing conducted by this Court in July 2022 concerning Yasuko's status as an "employer" under the Wage Payment Laws the Negitas, Maki and Kil S. Jung finally acknowledged the existence of Kuraku and that it was owned and/or operated by the Negitas and Maki.

30.     Even with several post-judgment standing orders to the Negitas and Maki to produce documents relevant to their assets, to date, they have failed to do so.

31.     First, because the Negitas and Maki were ignoring their obligations to respond to

the Subpoenas, on August 25, 2022, the Court ordered that:

> The [RYI Judgment Debtors] (Mrs. Negita, Mr. Negita, Maki and RYI) are ordered
> to serve on [Judgment Creditors] by no later than 8:00 p.m. on August 25, 2022...
> to deliver to counsel for [Judgment Creditors] all documents identified in the
> subpoena duces tecum and subpoena ad testificandum served on each of the [RYI
> Judgment Debtors]. ... The restraint on the sale, transfer, or disposition of assets of
> any kind previously entered by the Court shall continue."

[DE 523]

32.     This order resulted in Judgment Creditors being served with affidavits dated August

29, 2022 executed by Yasuko, Negita, and Maki [DE 531-8] purporting to be each of their

respective CPLR 6219 Garnishee's Statements. In their respective CPLR 6219 Garnishee's

Statements each affiant deliberately made false and materially misleading statements as to the

existence, location, and value or amount of substantial assets that these Judgment Debtors owned

or controlled.

33.     On September 12, 2022, Maki signed a sworn "Affidavit" on behalf of RYI, in

which she made representations that RYI has no assets, that a checking and a savings account held

by RYI "has been closed by Aug 2nd" and that RYI had outstanding debts of a rent balance, two

Payroll Protection Plan loans ("PPP Loans"), COVID-19 Economic Injury Disaster Loans from

the SBA, and a "Restaurant Revitalization Fund from SBA". [DE 633-13] However, she failed to

disclose that RYI had paid at least $249,000 to Y&S (without providing any

information/documentation or explanation as to the reasons for these payments), $65,500 to

unknown payees (without providing any information/documentation regarding the reason for these

payments), and $150,000 to Kil S. Jung to hide. [DE 633-15] Further, even though a month earlier,

the Negitas and Maki acknowledged the existence of Kuraku and documentation subsequently

obtained by Judgment Creditors revealed that Kuraku was formed in 2018 and that Yasuko owned

90 percent of its shares with Maki owning the remaining 10 percent [DE 633-20] (which the

8

Negitas and Maki produced in hardcopy at the Courthouse on December 19, 2022), neither Yasuko

nor Maki identified their Kuraku ownership interest in their respective CPLR 6219 Garnishee's

Statements.

34.    Yasuko, Negita, and Maki ignored the Court's order.

35.    On August 30, 2022, Judgment Creditors were forced to file their first motion to

compel the recalcitrant Judgment Debtors' production and for sanctions for contempt of the First

Order. [DE 530] On September 27, 2022, the Court conducted a hearing on Judgment Creditors'

motion to compel and for contempt.

36.    The Negitas and Miho in fact admitted to flouting the Court's First Order that they

found was without any excuse:

> Pawar: ...[Y]our Honor's order was not complied with. ...[T]here's absolutely no
> excuse for it. ...And to answer your question bluntly, some of your orders directing
> [production of documents responsive to Judgment Creditors' subpoenas], it didn't
> happen. There's no excuse for that....

September 27, 2022 transcript annexed as Exhibit 5 [Tr. 17:18-18:3].

37.    At the hearing, the Court made the following findings:

> I think it's unavoidable that [Yasuko, Negita, Miho, and RYI] are in contempt of
> court. ...I am inclined to impose a sanction, but not a very severe one, *not as severe*
> *as if there was more extensive evidence of willful disobedience.*

[Tr. 18:18-18:24]

> On August 10, I signed an order granting plaintiff's [sic] motion for leave to
> examine defendants with respect to nature, extent, and location of their assets....
> What followed was a casebook example of foot dragging and a flouting of court
> orders.

[Tr. 30:6-30:14]

> At this stage [September 27, 2022], as to willfulness, while I believe that a finding
> of willfulness is supported, the evidence is not incredibly strong with respect to
> willfulness. ... *I believe that this sanction I'm about to impost is the lesser*
> *sanction that I can impose and that the further sanction that I do intend to impose*
> *would be imposed only when the duration of noncompliance causes severe*
> *prejudice to the plaintiffs and also makes clearer the extent of willfulness....I*

*have warned the litigations, including in the August 25 order and at other times.*

[Tr. 36:7-36:18] (emphasis added).

38.     On September 27, 2022, the Court found each of Yasuko, Negita, Miho, and RYI

in contempt of the Court and imposed criminal sanction on each of them to pay $5,000 on or before

October 7, 2022 for failure to produce all documents responsive to the Subpoenas, which was

subsequently embodied in the Second Order [DE 560]:

> [Judgment Creditors] have established by clear and convincing evidence that each
> of the [Judgment Debtors] have violated the Court's ruling through [Judgment
> Debtors'] refusal to produce documents and information sought by [Judgment
> Creditors].... If the RYI [Judgment Debtors] fail to be in compliance with the
> Court's August 25 order by October 7, 2022 by failing to produce the documents
> requested in [Judgment Creditors'] subpoenas, each of the RYI [Judgment Debtors]
> must pay a sanction of $1,000 per day for each day that they remain in
> noncompliance.

39.     Yasuko, Negita and Maki did not comply with the Court's Order to be in

compliance with their production obligations on or before October 7, 2022, or indeed at any time

thereafter. They paid the $5,000 criminal contempt sanctions assessed against each of them but

otherwise ignored the Court's order.

40.     As a result, Judgment Creditors were forced to pursue a second motion for contempt

against Yasuko, Negita, Maki and RYI, which they filed on October 31, 2022. [DE 574]

41.     On November 23, 2022, the Court conducted a hearing on this motion and on the

contention by counsel for Yasuko, Negita, Maki and RYI that categories of documents sought by

Plaintiffs were privileged from disclosure pursuant to the Fifth Amendment of the United States

Constitution. On December 12, 2022, the Court issued an Opinion and Order [DE 605], in which

it granted Judgment Creditors' motion to compel in substantial part, substantially rejecting the

Fifth Amendment objections and denying production on privilege grounds only with respect to

documents relating to income earned outside of the United States.

42.     The Court also denied RYI's request to vacate the monetary sanctions imposed

against it but denied Judgment Creditors' request that sanctions be imposed against Pawar and Siegel. While the Court denied imposition of sanctions on RYI Judgment Debtors' counsel, the Court observed that this denial was "not an easy one", since "RYI Counsel has demonstrated a continued willingness throughout this litigation to assert discovery objections that have little to no basis in the law", referencing specific examples of statements made at the November 23 hearing. [DE 605, p. 27]

43.    Separate from these motions, counsel for the Negitas, Maki and RYI, Vik Pawar and Martin Siegel, each filed a motion to withdraw from this case. [DE 594, DE 595] In a Memorandum and Order dated December 12, 2022 [DE 606], the Court denied these motions. The Court noted: "Although there has been little for counsel or for the RYI Judgment Debtors to do— other than to produce documents and sit for depositions regarding their assets—the RYI Judgment Debtors have managed to delay doing so." [DE 606 (Memorandum and Order denying counsels' motions to withdraw), p. 5] Thus, the Court has recognized that Yasuko, Negita, and Miho, regardless of whether they had been aided by counsel or ignored counsel, have flouted their obligations to engage in post-judgment discovery and have figuratively if not literally thumbed their noses at the Court.

44.    Subsequent to the November 23, 2022 hearing, RYI Judgment Debtors produced only a small portion of the documents that their counsel acknowledged at the hearing were not subject to an ostensible challenge on Fifth Amendment grounds.

45.    Separately, on November 18, 2022, Judgment Creditors moved for an order compelling Yasuko and Negita to turn over certain investment accounts held by them with Merrill Lynch, Pierce. Fenner & Smith, a Bank of America Company ("Merrill"), and to turn over their real property located in Tenafly, New Jersey. [DE 583] The Court conducted a hearing on this motion on December 19, 2022.

11

46.     On December 19, 2022, after the hearing, the Court ordered Yasuko and Negita to turn over to Judgment Creditors the entirety of the funds or assets in their retirement accounts held with Merrill, rejecting their claim that those retirement accounts were entirely or partially exempt from turnover. [DE 616] On January 30, 2023, Judgment Creditors served the turnover order on Yasuko and Negita through their counsel of record in this proceeding, Vik Pawar. To date, Judgment Creditors have not received any of the securities and/or funds in those accounts, nor have Judgment Debtors received any of the securities and/or funds in a non-retirement investment account maintained by Yasuko with Merrill notwithstanding that Yasuko did not and could not object to turnover of the funds and assets in that account and did not seek by motion or other legal claim to this Court to challenge Judgment Creditors' right to the securities and/or funds in that non-retirement account.

47.     On December 16, 2022 (prior to the December 19 hearing that resulted in this Court's order to turn over to Judgment Creditors the two Merrill retirement), I was contacted by two New Jersey-based attorneys (Roy and Cooper) who asserted they represented Yasuko and Negita (but not Maki and RYI). In my declaration in support of Judgment Creditors' motion for determination that a restaurant named Kuraku is the *alter ego* or disguised continuance of RYI [DE 633 and the exhibits referenced therein], I detailed the duplicitous course of conduct of these attorneys over a several month period, which concluded in the filing for bankruptcy protection by Yasuko and Negita in the Bankruptcy Proceeding.

48.     Related to this motion is the fact that despite knowing that the Negitas were subject to *several standing orders from this Court* to disclose all of their bank accounts held with Japanese banks, their real properties in Japan, and any debt anyone owed to them, Roy and Cooper did not disclose to Judgment Creditors that Yasuko had a second bank account with Kiraboshi Bank; that she owned at least 40% of a building with a ground lease located on four parcels of land (of which

12

Judgment Creditors had knowledge) which under Japanese systems are divisible interest; that the building included two residential units; that in August 2022 (Yasuko testified to this date in the 341 Creditors' meeting), Yasuko had given a purported loan of $106,000 to her niece who was paying it back $72 per month; and that Yasuko and Negita had hidden cash with Kil S. Jung and in at least two bank accounts that were opened in the name of Maki's daughter Haruna. All of this information and documents relating to these matters were covered by the post-judgment discovery requests made to Yasuko, Negita, Maki and RYI and by the successive Orders of this Court, all of which were ignored.

49.    On May 29, 2021, with two checks drawn on Y&S's TD Bank account, Maki paid $50,000 to Haruna. [DE 633-26] These checks are deposited in an account at an unknown bank. It is highly likely that Maki and/or the Negitas were in control of that account as well as the TD Bank account which pursuant to a subpoena produced Haruna's bank statements.

50.    After the Court issued its Order dated December 12, 2022 to the Negitas and Maki [DE 605], Judgment Creditors were provided with their respective family registries from which Judgment Creditors could locate some of their assets in Japan.

51.    With the family registries, Judgment Creditors were able to identify some of the assets of Yasuko located in Japan, including Yokoyama Plastics Co., Ltd. ("Yokoyama Plastics"), a Japanese domestic corporation, in which Yasuko holds a significant ownership interest and from which, as I was informed by a different counsel representing Yasuko, Hirosato Nabika (who is located in Japan but is admitted to the New York Bar), she receives passive rent income and dividends.

52.    Investigation further revealed that Yasuko owns or has a significant ownership interest in four parcels of land in Japan located at the following addresses:

- 8-37-2 Tateishi, Katsushika-Ku, Tokyo, Japan; and
- 8-37-3 Tateishi, Katsushika-Ku, Tokyo, Japan; and

13

    • 8-37-4 Tateishi, Katsushika-Ku, Tokyo, Japan; and

    • 8-37-7 Tateishi, Katsushika-Ku, Tokyo, Japan.

[DE 633-1 to 633-3]

53.    Judgment Creditors acknowledge that commencement of the Bankruptcy
Proceeding by Yasuko and Negita triggers an automatic stay of legal proceedings for payments
asserted against them, unless and until the bankruptcy court provides relief from the automatic
stay. However, the facts set forth in my declaration as to Yasuko and Negita are presented not in
an attempt to seek a finding of *civil* contempt against them to force them to disclose information
or to pay the judgment but rather seek a finding of *criminal* contempt against them because of
their pre-bankruptcy conduct in defying the orders of this Court and ignoring their obligations to
produce documents and information requested by Judgment Debtors to engage in post-judgment
discovery and to satisfy the judgment of this Court. The conduct of the Negitas warrants the
imposition by this Court of sanctions for *criminal* contempt that is a definite term of imprisonment,
which jurisdiction remains with this Court and is not precluded by the filing for bankruptcy by
Yasuko and Negita.

54.    During discussions with bankruptcy counsel for Yasuko and Negita (Roy and
Cooper) during the lengthy negotiation process prior to their filing of the petition in the Bankruptcy
Proceeding, I informed Roy of the assets of Yasuko and Negita that Judgment Creditors had
discovered and that Yasuko and Negita had not disclosed to them. I also stated to bankruptcy
counsel that it was likely that their clients had not disclosed other assets they held in Japan that
Judgment Creditors intended to uncover.

55.    As I discussed in my Reply Declaration in Support of the Motion Pursuant to
Fed.R.Civ.P. 69 and Applicable New York Statutes pending before this Court [DE 641], in the
Summary of Assets and Liabilities and Certain Statistical Information filed in the Bankruptcy
Proceeding ("Summary of Assets and Liabilities") [DE 641-10], Yasuko and Negita disclosed

some of the assets that they had failed to disclose to Judgment Creditors as directed by this Court in its repeated orders, including a second bank account held by Yasuko with Kiraboshi Bank, Yasuko's ownership of a building in Japan, and her ownership of fifty percent of a business in Japan. Yasuko and Negita were required, pursuant to the subpoenas served on them by Judgment Creditors on August 15, 2022 [DE 531-2] and the orders of this Court to disclose these assets, but they willfully withheld this information until including this information in the Bankruptcy Proceeding.

56.     In the Summary of Assets and Liabilities, Yasuko and Negita identified for the very first time another asset—repayment to Yasuko of a loan made to Mai Yokoyama, with a value of $106,437.78.

57.     On April 26, 2023, a creditors committee meeting was conducted in the Bankruptcy Proceeding. This meeting was conducted by telephone, and Yasuko and Negita were present with counsel. During this meeting, Yasuko and Negita testified under oath (with a Japanese interpreter) about the assets and liabilities identified in the Summary of Assets and Liabilities. A transcript of the creditors committee meeting was taken. Yasuko testified that Mai Yokoyama is her niece; that she made the loan to Ms. Yokoyama in August 2022 (the schedule of Yasuko's assets sets September 15, 2022 as the date the loan was made [DE 633-34]—well after the restraining order [DE 505] was issued to enjoin her from dissipating her assets); and Ms. Yokoyama is obligated to repay this loan at a rate of $72.80 per month.

58.     Neither Yasuko nor Negita disclosed any information about the funds paid to Kil S. Jung or deposited in bank accounts held in the name of Kil S. Jung.

59.     Without a full forensic accounting of Kil S. Jung's books and records, it is impossible to know the extent of his cooperation in hiding the Negitas, Maki, and Kora's assets.

***Continuing Criminal Contempt by Maki***

15

60.     Review of Y&S's account records produced in post-judgment discovery revealed that three sizable checks had been written by Y&S (over which Maki had signing authority) to Maki's daughter, Haruna Maki ("Haruna"), totaling $55,000, one of which for $5,000 was deposited in a TD Bank account believed to be owned by Haruna [DE 633-31] and two of which for a total of $50,000 which were deposited in a different bank account held at an unknown bank

61.     Judgment Creditors served on TD Bank a subpoena for account records of Haruna, Maki, and Maki's daughter Shona (apparently pronounced Sachina). [Annexed as Exhibit 6 is the subpoena served on TD Bank] TD Bank responded to the subpoena on April 28, 2023 by providing requested account records, including bank statements for Haruna's TD Bank account, the account opening/signature card for that account, deposit records, and withdrawal/check payment records.

62.     These records demonstrate that between 2017 and March 2023, the Haruna account was utilized by Maki solely for laundering/funneling RYI funds to Kuraku, Yasuko, and Kil S. Jung. Deposits were made into the Haruna account in large sums of cash (totaling $81,000) and in checks written from Maki's TD Bank account (totaling $68,000) and in one instance the TD Bank account of Y&S (totaling $5,000). [DE 641-3] Checks were written on that account for RYI's operations and for transfer of $30,000 to Kil S. Jung (the accountant who has served them since 2013 or earlier) on March 9, 2023 and transfer of $5,000 to Yasuko on March 14, 2023 [DE 641-8]—both such payments after the Court's entry of Judgment [DE 514] and the Order of August 12, 2022 restraining Maki and the other Judgment Debtors from dissipating their assets [DE 515], and after the Court's Order of September 30, 2022 finding Maki (as well as Yasuko, Negita, and RYI in criminal contempt) and ordering them to pay fines to the Court for this contempt [DE 560].

63.     On May 18, 2023, this Court conducted a hearing on the motion of Judgment Creditors to, among other matters, find that the Haruna TD Bank account was in fact an account operated by Maki and utilized for hiding RYI funds. Maki testified during that hearing, which did

not conclude on that day. The hearing has been continued to June 26, 2023, at which time Maki's testimony will recommence.

64.     In her testimony, Maki acknowledged that the Haruna account was used by Maki and others for depositing cash and that between 2017 and 2023, Haruna was in Japan and was not responsible for any activity in the account—obviously, Haruna did not sign any of the checks either. Maki did not disclose on RYI's CPLR 6219 Garnishee's Statement [DE 633-13] or in any other manner the existence of the Haruna account and that in actuality it was an account utilized by RYI Judgment Debtors.

65.     Further, in RYI's CPLR 6219 Garnishee's Statement [DE 633-13] dated September 12, 2022, which Maki signed under oath on behalf of RYI, Maki concealed from Judgment Creditors, in breach of her obligations as manager and representative of RYI and as manager of Y&S that she had made a payment to Kil S. Jung from the account of RYI by check dated May 11, 2022 in the amount of $150,000 with the statement in the memo line "SBA loan" [DE 633-27] and a payment from the account of Y&S dated December 22, 2021 in the amount of $149,900 [DE 633-26]. Each of these checks was signed by Maki. The fact that "SBA" was written on the check is just another tactic for the Negitas and Maki to defraud Judgment Creditors as there is no logical reason for them to pay any money that must be returned to the Department of Treasury to Kil S. Jung for him to hold indefinitely.

66.     These checks were drawn to the order of Kil S. Jung from RYI and from Y&S for Yasuko, Negita, Maki, and Kora to dissipate their assets by transferring approximately $300,000 to Kil S. Jung and secreting it from Judgment Creditors. Maki was the signer of each of these checks.

67.     In addition to the $300,000, as described above, Nancy Isaacson, the Chapter 5 trustee of the Bankruptcy Proceeding, informed me that another $60,000 from accounts under

17

Haruna's name were transferred to Kil S. Jung which may include the check for $30,000 TD Bank produced [DE 641-8, p. 12 of the PDF file] or could be in addition to this payment.

68.    Even though the checks to Kil S. Jung from RYI and Y&S totaling approximately $300,000 were written on December 22, 2021 and May 11, 2022, prior to the Court's entry of Judgment on August 10, 2022 [DE 514], Maki was fully aware that on August 10, 2021, the Court granted summary judgment to Judgment Debtors against RYI and Y&S (as well as against Negita, Maki, and Kora personally) [DE 419] and each of these defendants would be liable jointly and severally for the judgment to be entered. Maki also was fully aware that while Yasuko's status as an "employer" of Judgment Creditors had not yet been determined, if she were bound to be an "employer" (which the Court so found in its oral decision rendered on July 11, 2022), Yasuko would also be jointly and severally liable for the Judgment. Maki's conduct in assisting in dissipating the asserts of RYI and Y&S to avoid the payment by those Judgment Debtors to satisfy the Judgment, both after the entry of Judgment on August 10, 2022 and before the entry of Judgment when Maki was well aware of the impending judgment, constitutes contemptuous conduct that cries out for criminal contempt sanctions against her.

## CONCLUSION

69.    Financial sanctions have to date had no impact on Yasuko, Negita, Maki and Kora for them to abide by the directives of this Court and to honor their obligations to Judgment Creditors. They have continued to defy those obligations and to thumb their noses at this Court. Since they believe filing bankruptcy will enable to them to defy this Court without any ramifications, they will continue to hide their assets from all creditors.

70.    Without issuing severe punishment—which at this time is only a definitive term of imprisonment—the integrity of this Court will be jeopardized because the Negitas, Maki, Kora, and Kil Jung will become case study as to how to beat the legal system. As I stated above, this

18

motion is for imposition of appropriate punishment, specifically a definitive term of imprisonment, to deter future contemptuous conduct by Judgment Debtors in this case and to deter employers in the future from abusing employees by depriving them of wages and benefits to which they are legally entitled and then evading the consequences of their violations of wage payment laws.

71.     For all the foregoing reasons, Judgment Creditors respectfully submit that the Court should find that Yasuko, Negita, Maki, and Kora have continued to be contempt of the Court's Orders, and that the Court should commence proceedings to have them adjudged in criminal contempt for their defiance of the Court's Orders and Commands, for which only a definite term of imprisonment will be appropriate.

Dated: New York, New York
     May 22, 2023

                                    /s/Florence Rostami
                                    Florence Rostami

# EXHIBIT 1

## Email to Kil S. Jung dated 8/2/2022

| | |
|---|---|
| **From:** | Florence Rostami |
| **To:** | Kil Jung |
| **Cc:** | Rachel Izower-Faddé (rizower@izowerfeldman.com); Neal Haber (nhaber@rostamilaw.com); Vik Pawar; Howard Chun |
| **Subject:** | for your information only |
| **Date:** | Tuesday, August 2, 2022 5:28:00 PM |
| **Attachments:** | DE 505--Order of Attachment-Restraining Order.pdf |

Mr. Jung,

As you may have heard, the Judge found in favor of Plaintiffs, and recently issued an order of attachment for certain assets of Defendants which I attach for your information.

*Florence Rostami*

**Florence Rostami Law, LLC**
**The Graybar Building, Suite 1402**
**420 Lexington Avenue**
**New York,  New York 10170**
**M (917) 846-0335**
**T (212) 209-3962**
**F (212) 209-7100**
**frostami@rostamilaw.com**
**www.rostamilaw.com**

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the addressee(s) named above.  Any disclosure, distribution, copying or use of the information by others is strictly prohibited.  If you have received this message in error, please notify the sender by immediate reply and delete the original message.  Thank you. Please note that the English language of this document is controlling and not the Japanese translation which is provided for your convenience only.  この e-mail の中で英文と日本語文が併記されている場合は、英文が主文となります。日本語は単に便宜的・補助的に併記されたもので、解釈の齟齬があった場合には英文の解釈が優先されることを御承知ください。）

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORNRAT KEAWSRI, et. al., | INDEX NO. 17-cv-02406 (LJL)(OTW) |
| *Plaintiffs,* | |
| | ORDER OF ATTACHMENT OF |
| | IDENTIFIED PROPERTY PURSUANT |
| v. | TO FED. R. CIV. P. RULE 64, N.Y. |
| | CPLR 6201, 6211(a) AND 6212(a), AND |
| | ORDER OF TEMPORARY |
| RAMEN-YA INC., et. al., | RESTRAINT |
| *Defendants.* | |

WHEREAS the Court has previously rendered decisions, in an Opinion & Order dated August 10, 2021 and an oral decision made on July 11, 2022, that Defendants are liable to Plaintiffs for damages, penalties, attorney's fees and costs for violations of the Fair Labor Standards Act, the New York Labor Law, and the New York Hospitality Wage Order, with the exact amount of such damages, penalties, attorney's fees and costs to be determined by the Court, and

WHEREAS on July 15, 2022, Plaintiffs filed an application for damages, penalties, prejudgment interest, and attorneys' fees and costs, claiming that Defendants are joint and severally liable for $1,869,034.26, and

WHEREAS on July 28, 2022 an *ex parte* application was made to the undersigned pursuant to Fed. R. Civ. P. 64 and CPLR 6201, 6211(a), and 6212 by Plaintiffs Ornrat Keawsri ("Keawsri"), Sachina Nagae ("Nagae"), Takayuki Sekiya ("Sekiya"), Siwapon Topon ("Topon"), Pimparat Ketchatrot ("Ketchatrot"), Thiratham Ratsuk, ("Ratsuk"), Partichat Kongtuk ("Kongtuk"), Tanon Leechot ("Leechot"), Thanatharn Kulaptip ("Kulaptip"), Wanwisa Nakwirot ("Nakwirot"), Natcha Natatpisit ("Natatpisit"), and Parada Mongkolkajit ("Mongkolkajit"), collectively "Plaintiffs", for an Order of

1

Attachment against certain property of Defendants Yasuko Negita ("Mrs. Negita"), Masahiko Negita

("Negita"), Miho Maki ("Maki"), Ramen-Ya Inc. ("RYI") and Y&S International Corp. ("Y&S") in an

action in the United States District Court, Southern District of New York entitled Keawsri et al. v. Ramen-

Ya Inc. et al., Index No. 17-cv-02406 (the "Lawsuit"), and

WHEREAS on July 27, 2022 an *ex parte* application was made to the undersigned pursuant to

Fed. R. Civ. P. 64 and CPLR 5229 by Plaintiffs for an order of restraint against Mrs. Negita, Negita, Maki,

RYI, Y&S, and Kenji Kora ("Kora"), collectively "Defendants," (1) prohibiting them from selling,

transferring, conveying, gifting, pledging, assigning, or otherwise encumbering any assets or interest in

any assets, and (2) compelling each Defendant to appear for examination concerning the nature, extent,

and location of their assets, and

WHEREAS on July 29, 2022 the Court conducted an *ex parte* hearing on the applications, and

WHEREAS Plaintiffs have demonstrated that they have satisfied the grounds for *ex parte* relief

because the Court is satisfied that there is an imminent risk that Defendants will remove or dissipate assets

if notice of the application for attachment and for an order of restraint is given to Defendants, and

WHEREAS Plaintiffs have demonstrated that they have satisfied the grounds for an *ex parte*

attachment under CPLR 6201(1) against Mrs. Negita and Negita because they are nondomiciliaries living

outside the State of New York and also have satisfied the grounds for an *ex parte* order of attachment

under CPLR 6201(3) by alleging facts which sufficiently establish the intent of Mrs. Negita, Negita, Maki,

RYI and Y&S to defraud their creditors, and

WHEREAS Plaintiffs have identified deposits owned by RYI and Y&S, shares in an entity known

as Ku-Raku and the Kuraku restaurant owned and operated by Mrs. Negita, and real property of Mrs.

Negita, situated in the United States, that can be applied to satisfy the judgment to be rendered by the

2

Court in the Lawsuit, and

WHEREAS Plaintiffs have demonstrated that they have satisfied the grounds for a restraining order under CPLR 5229 against all Defendants to prohibit them from selling, transferring, conveying, gifting, pledging, assigning, or otherwise encumbering any assets or interest in any assets, because a decision or verdict has been rendered against them in the Lawsuit and there are facts which sufficiently establish Defendants' intent to defraud their creditors,

NOW THEREFORE, upon the *ex parte* motion of Plaintiffs through their attorneys Florence Rostami Law LLC,

IT IS HEREBY ORDERED that Plaintiffs' application for an *ex parte* Order of Attachment is GRANTED and this Order of Attachment shall be effective immediately and shall remain so unless otherwise amended or vacated by this Court.

IT IS FURTHER ORDERED that pursuant to the Order of Attachment and CPLR 6201, CPLR 6211(a), and CPLR 6212(a), Mrs. Negita, Negita, Maki, RYI and Y&S are enjoined from transferring, selling, assigning, hiding, dissipating, or moving the following assets out of the reach of Plaintiffs to satisfy the judgment that will be issued for Plaintiffs in this action:

a. Property located at 309 Knickerbocker Road, Tenafly, New Jersey, also known as 8 Floral Terrace, Tenafly New Jersey ("Real Property") owned by Mrs. Negita.

b. All shares of Ku-Raku New York, Inc. ("Ku-Raku") owned by Mrs. Negita, which operates a restaurant in New York County under the trade name "Ramen Kuraku."

c. The restaurant Ramen Kuraku.

d. RYI bank account 7528057408 with Capital One ("RYI Account"), except to the extent that funds in such account are required to be expended to make legitimate payments to

3

RYI's creditors.

e. Y&S bank accounts 428-968578 and 434-7134879 ("Y&S Accounts") with TD Bank, except to the extent that funds in such accounts are required to be expended to make legitimate payments to RYI's creditors.

IT IS FURTHER ORDERED that pursuant to Rule 64 of the Federal Rules of Civil Procedure, and Articles 62 and 75 of the CPLR, the U.S. Marshal for the Southern District of New York or any person appointed to act in their place and stead shall, pursuant to CPLR 6214, levy without taking possession within this Court's jurisdiction the property to which attachment has been ordered herein.

IT IS FURTHER ORDERED that following persons shall act in the place and stead of the U.S. Marshal for the purpose of serving this Order of Attachment and effecting any levy ordered hereby: Demovsky Lawyer Service, 401 Broadway, Suite 808, New York, New York 10013, and its employees.

IT IS FURTHER ORDERED that pursuant to CPLR 5229, Defendants are restrained from selling, transferring, conveying, gifting, pledging, assigning, or otherwise encumbering any assets or interest in any assets in their possession, custody or control up to $1,869,034.26, which restraining order shall expire at the end of the day on August 10, 2022 unless the restraining order is extended by the Court.

IT IS FURTHER ORDERED that Plaintiffs *ex parte* application for leave to examine Defendants with respect to the nature, extent and location of their assets is denied, with Plaintiffs provided leave to file such motion on notice

IT IS FURTHER ORDERED that Plaintiffs and Defendants shall appear, by counsel, for a hearing before the Court, 500 Pearl Street, Courtroom 15C, on August 9, 2022, commencing at 10:00 a.m., at which time the Court shall consider whether to continue, modify, or terminate the Order of Attachment and/or the Restraining Order.

4

IT IS FURTHER ORDERED that within five days of issuance of this Order of Attachment, Petitioner shall move for an order confirming the Order of Attachment.

IT IS FURTHER ORDERED that, within ten days of being served a copy of this Order of Attachment, Defendants shall serve the statement required by CPLR 6219 upon Plaintiffs' counsel, Florence Rostami LLC, by email delivery to Florence Rostami at frostami@rostamilaw.com, with copies to Neal Haber at nhaber@rostamilaw.com and Rachel Izower-Fadde at rizower@izowerfeldman.com.

IT IS FURTHER ORDERED that Petitioner shall post a bond in the amount of $2,000.00 as security within 5 days of this Order of Attachment

AND IT IS FURTHER ORDERED that pursuant to Fed. R. Civ. P. 4(f)(3), service of the Order of Attachment shall be made by email to the individual counsel at the corresponding email addresses listed below:

- Counsel for Mrs. Negita, Negita, Maki, and RYI to Vikrant Pawar, at vikrantpawaresq@gmail.com
- Counsel for Kora and Y&S to Howard Chun, at howard@kaplanchun.com.

SO ORDERED.

Dated: New York, New York
     July 29, 2022
     6:25 PM EST

                                     _____
                                     Lewis J. Liman
                                     United States District Judge

# EXHIBIT 2

## Email to Kil S. Jung dated 5/15/2023

| | |
|---|---|
| **From:** | frostami |
| **To:** | Kil Jung |
| **Cc:** | Vik Pawar; MARTIN SIEGEL; Neal Haber; Howard Chun |
| **Subject:** | RE: Court Order |
| **Date:** | Monday, May 15, 2023 5:16:00 PM |
| **Attachments:** | Order re Attendance of Kil Jung 051523.pdf |

Mr. Jung,

I attach an order from Judge Liman to you regarding the necessity for attending and testifying on May 18, 2023.

*Florence Rostami*

**Florence Rostami Law, LLC**
**The Graybar Building, Suite 1402**
**420 Lexington Avenue**
**New York, New York 10170**
**M (917) 846-0335**
**T (212) 209-3962**
**F (212) 209-7100**
**frostami@rostamilaw.com**
**www.rostamilaw.com**

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the addressee(s) named above. Any disclosure, distribution, copying or use of the information by others is strictly prohibited. If you have received this message in error, please notify the sender by immediate reply and delete the original message. Thank you. Please note that the English language of this document is controlling and not the Japanese translation which is provided for your convenience only. このe-mailの中で英文と日本語文が併記されている場合は、英文が主文となります。日本語は単に便宜的・補助的に併記されたもので、解釈の齟齬があった場合には英文の解釈が優先されることを御承知ください。）

**From:** frostami
**Sent:** Friday, May 12, 2023 4:34 PM
**To:** Kil Jung <kyoungcpa@gmail.com>
**Cc:** Vik Pawar <vikrantpawaresq@gmail.com>; MARTIN SIEGEL <mart2u@aol.com>; Neal Haber <nhaber@rostamilaw.com>; Howard Chun <Howard@kaplanchun.com>
**Subject:** RE: Court Order
**Importance:** High

Mr. Jung,

I attach a subpoena for your attendance at the hearing scheduled on May 18, 2023 at 11:00 am before Judge Liman so that there is no confusion that you must attend the hearing. We also ask that you produce certain documents (listed on the subpoena) by Wednesday My 17 so that we do not take too much of the Court's time at the hearing.

*Florence Rostami*

**Florence Rostami Law, LLC**
**The Graybar Building, Suite 1402**
**420 Lexington Avenue**

New York, New York 10170
M (917) 846-0335
T (212) 209-3962
F (212) 209-7100
frostami@rostamilaw.com
www.rostamilaw.com

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the
addressee(s) named above. Any disclosure, distribution, copying or use of the information by others is strictly
prohibited. If you have received this message in error, please notify the sender by immediate reply and delete the
original message. Thank you. Please note that the English language of this document is controlling and not the
Japanese translation which is provided for your convenience only. このe-mailの中で英文と日本語文が併記されてい
る場合は、英文が主文となります。日本語は単に便宜的・補助的に併記されたもので、解釈の齟齬があった場合に
は英文の解釈が優先されることを御承知ください。）

**From:** frostami
**Sent:** Friday, May 12, 2023 11:24 AM
**To:** Kil Jung <kyoungcpa@gmail.com>
**Cc:** Vik Pawar <vikrantpawaresq@gmail.com>; MARTIN SIEGEL <mart2u@aol.com>; Neal Haber
<nhaber@rostamilaw.com>; Howard Chun <Howard@kaplanchun.com>
**Subject:** RE: Court Order

Mr. Jung,

I attach another order from the Court regarding the hearing on May 18, 2023.

*Florence Rostami*

**Florence Rostami Law, LLC**
**The Graybar Building, Suite 1402**
**420 Lexington Avenue**
**New York, New York 10170**
**M (917) 846-0335**
**T (212) 209-3962**
**F (212) 209-7100**
frostami@rostamilaw.com
www.rostamilaw.com

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the
addressee(s) named above. Any disclosure, distribution, copying or use of the information by others is strictly
prohibited. If you have received this message in error, please notify the sender by immediate reply and delete the
original message. Thank you. Please note that the English language of this document is controlling and not the
Japanese translation which is provided for your convenience only. このe-mailの中で英文と日本語文が併記されてい
る場合は、英文が主文となります。日本語は単に便宜的・補助的に併記されたもので、解釈の齟齬があった場合に
は英文の解釈が優先されることを御承知ください。）

**From:** frostami
**Sent:** Tuesday, May 9, 2023 2:13 PM
**To:** Kil Jung <kyoungcpa@gmail.com>
**Cc:** Vik Pawar <vikrantpawaresq@gmail.com>; MARTIN SIEGEL <mart2u@aol.com>; Neal Haber
<nhaber@rostamilaw.com>; Howard Chun <Howard@kaplanchun.com>
**Subject:** Court Order

Mr. Jung,

I attach the Court's order issued today for a hearing to be held on **May 18, 2023 at 11:00** am
in Courtroom 15C, at the United States District Courthouse, 500 Pearl Street, NY, NY 10007.
You are required to attend the hearing.

*Florence Rostami*

**Florence Rostami Law, LLC**
**The Graybar Building, Suite 1402**
**420 Lexington Avenue**
**New York,  New York 10170**
**M (917) 846-0335**
**T (212) 209-3962**
**F (212) 209-7100**
**frostami@rostamilaw.com**
**www.rostamilaw.com**

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the
addressee(s) named above.  Any disclosure, distribution, copying or use of the information by others is strictly
prohibited.  If you have received this message in error, please notify the sender by immediate reply and delete the
original message.  Thank you. Please note that the English language of this document is controlling and not the
Japanese translation which is provided for your convenience only.  このe-mailの中で英文と日本語文が併記されてい
る場合は、英文が主文となります。日本語は単に便宜的･補助的に併記されたもので、解釈の齟齬があった場合に
は英文の解釈が優先されることを御承知ください。）

| From: | NYSD_ECF_Pool@nysd.uscourts.gov |
| To: | CourtMail@nysd.uscourts.gov |
| Subject: | Activity in Case 1:17-cv-02406-LJL-OTW Keawsri et al v. Ramen-ya Inc. et al Order |
| Date: | Monday, May 15, 2023 5:10:12 PM |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. District Court

### Southern District of New York

## Notice of Electronic Filing

The following transaction was entered on 5/15/2023 at 5:09 PM EDT and filed on 5/15/2023
**Case Name:** Keawsri et al v. Ramen-ya Inc. et al
**Case Number:** 1:17-cv-02406-LJL-OTW
**Filer:**
**WARNING: CASE CLOSED on 03/31/2023**
**Document Number:** No document attached

**Docket Text:**
**ORDER: The Court expects Mr. Jung to be in attendance and prepared to testify at the hearing on May 18, 2023. (HEREBY ORDERED by Judge Lewis J. Liman) (Text Only Order) (mf)**

**1:17-cv-02406-LJL-OTW Notice has been electronically mailed to:**

James Wilson Perkins     perkinsj@gtlaw.com, gtcourtalert@gtlaw.com, schaefferc@gtlaw.com

Neal David Haber     nhaber@rostamilaw.com, nhaber@mossboris.com

Rachel Lois Izower-Fadde     rizower@izowerfeldman.com, rizower@feldmanandassociates.com, rizower@gmail.com, rizower@izowerlefton.com

Martin Jay Siegel     mart2u@aol.com

Florence Rostami     frostami@rostamilaw.com

Ashley Ann-Vincent LeBlanc     leblanca@gtlaw.com, gtcourtalert@gtlaw.com, schaefferc@gtlaw.com

Vik Pawar     vik@pawarlaw.com, blossnerb@gmail.com

Rachna K Kapur     rkapur@rostamilaw.com

Howard Chanho Chun     howard@kaplanchun.com

**1:17-cv-02406-LJL-OTW Notice has been delivered by other means to:**

# EXHIBIT 3

## Payment made by Kil S. Jung to Kenji Kora

**Ħ Hanmi Bank**

**BANK COPY**

16-231/1220

**400062119**

July 13, 2022

PAY TO THE ORDER OF   KENJI KORA

$ 149,000.00

[PAY EXACTLY $149,000.00 DOLLARS]

REMITTER  KIL S JUNG CPA
MEMO:  700963802

Authorized Signature

**BANK COPY**
**NON-NEGOTIABLE**

Authorized Signature

**CASHIER'S CHECK**

OFAC Checked
Initial  Date

‖·400062119·‖·122039399·:  009

# EXHIBIT 4

## Emails to Howard Chun (Kora and Y&S Counsel) re their

## Production Obligations

| | |
|---|---|
| **From:** | frostami |
| **To:** | Howard Chun |
| **Cc:** | Neal Haber; Rachel Izower-Fadde |
| **Subject:** | list of documents |
| **Date:** | Monday, August 22, 2022 6:27:00 PM |
| **Attachments:** | List of Documents requested to Kenji Kora.pdf |
| **Importance:** | High |

Howard,

Since my handwriting is terrible, I have typed up the documents we requested today that Mr.
Kora produce by August 25, 2022.

*Florence Rostami*

**Florence Rostami Law, LLC**
**The Graybar Building, Suite 1402**
**420 Lexington Avenue**
**New York, New York 10170**
**M (917) 846-0335**
**T (212) 209-3962**
**F (212) 209-7100**
frostami@rostamilaw.com
www.rostamilaw.com

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the
addressee(s) named above. Any disclosure, distribution, copying or use of the information by others is strictly
prohibited. If you have received this message in error, please notify the sender by immediate reply and delete the
original message. Thank you. Please note that the English language of this document is controlling and not the
Japanese translation which is provided for your convenience only. この e-mail の中で英文と日本語文が併記されてい
る場合は、英文が主文となります。日本語は単に便宜的・補助的に併記されたもので、解釈の齟齬があった場合に
は英文の解釈が優先されることを御承知ください。）

### List of documents requested at the deposition of Kenji Kora on 8/22/2022

- Kenji Kora's Japanese password
- Bank Statements & Cancelled Checks for Y&S International's bank account(s)
  - Chase 2019
  - Chase 2020
  - Chase 2021
  - Chase 2022
- Bank Statements & Cancelled Checks for Y&S International's bank account(s)
  - TD Bank 2019
  - TD Bank 2020
  - TD Bank 2021
  - TD Bank 2022
- Bank Statements for Parkway North Real Estate
  - 2019
  - 2020
  - 2021
  - 2022
- Bank Statements & Cancelled Checks for Kenji Kora's personal bank account(s)
  - Citibank 2019
  - Citibank 2020
  - Citibank 2021
  - Citibank 2022
- Tax Returns
  - Y&S International Corp. 2019
  - Y&A International Corp. 2020
  - Kenji Kora/Arisa Kora 2017
  - Kenji Kora/Arisa Kora 2018
  - Kenji Kora/Arisa Kora 2019
  - Kenji Kora/Arisa Kora 2020
  - Kenji Kora/Arisa Kora 2021
  - Kenji Kora/Arisa Kora 2022
- Arisa Kora's bank account information and bank statements in 2021 and 2022
- Name of attorneys who represented Kenji Kora in the past 5 years, and amounts paid to each of them.
- Disaster Loan Agreement and Note.
- Information/documents regarding Y&S Loans to Shareholders made in Fiscal Year 2021.
- Bank account information and bank statements to/in which Kenji Kora's U.S. social security and Japanese social security payments were paid/deposited, as well as the bank statements of such account(s) in 2021 and 2022.

| From: | frostami |
|---|---|
| To: | Howard Chun |
| Cc: | Neal Naber |
| Subject: | RE: payments from SBA paid to Kil Jung |
| Date: | Wednesday, October 5, 2022 6:12:00 PM |
| Importance: | High |

Howard,

To remind you that all cancelled checks are part of the required documents per the subpoenas. For example, on August 31, a check for $100,000 was cashed by someone from Y&S Chase account. We need to see who received that payment.

*Florence Rostami*

**Florence Rostami Law, LLC**
**The Graybar Building, Suite 1402**
**420 Lexington Avenue**
**New York,  New York 10170**
**M (917) 846-0335**
**T (212) 209-3962**
**F (212) 209-7100**
frostami@rostamilaw.com
www.rostamilaw.com

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the addressee(s) named above. Any disclosure, distribution, copying or use of the information by others is strictly prohibited. If you have received this message in error, please notify the sender by immediate reply and delete the original message. Thank you. Please note that the English language of this document is controlling and not the Japanese translation which is provided for your convenience only. この e-mailの中で英文と日本語文が併記されてい る場合は、英文が主文となります。日本語は単に便宜的・補助的に併記されたもので、解釈の齟齬があった場合に は英文の解釈が優先されることを御承知ください。）

**From:** frostami
**Sent:** Wednesday, October 5, 2022 3:56 PM
**To:** Howard Chun <Howard@kaplanchun.com>
**Subject:** payments from SBA paid to Kil Jung

Howard,

I attach two pages of the Dec statement that show receipt of a deposit of $150,000 SBA loan on 12/14/21 and payment of $150,000 to Kil Jung on 12/22/21. Please ask Mr. Kora to ask Kil Jung about these transactions.

*Florence Rostami*

**Florence Rostami Law, LLC**
**The Graybar Building, Suite 1402**
**420 Lexington Avenue**
**New York,  New York 10170**
**M (917) 846-0335**
**T (212) 209-3962**
**F (212) 209-7100**

frostami@rostamilaw.com
www.rostamilaw.com

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the
addressee(s) named above. Any disclosure, distribution, copying or use of the information by others is strictly
prohibited. If you have received this message in error, please notify the sender by immediate reply and delete the
original message. Thank you. Please note that the English language of this document is controlling and not the
Japanese translation which is provided for your convenience only. このe-mailの中で英文と日本語文が併記されてい
る場合は、英文が主文となります。日本語は単に便宜的·補助的に併記されたもので、解釈の相違があった場合に
は英文の解釈が優先されることを御承知ください。)

| | |
|---|---|
| **From:** | frostami |
| **To:** | Howard Chun |
| **Cc:** | Neal Haber |
| **Subject:** | Re: Y&S, Parkway North, Kora |
| **Date:** | Wednesday, November 2, 2022 8:47:36 AM |
| **Attachments:** | staples_scan (31).pdf |
| | staples_scan (30).pdf |
| | staples_scan (32).pdf |
| | staples_scan (29).pdf |

Howard

Thank you. Please provide a copy of the loan agreement, accounting of how the money was
spent— invoices, statements, receipt, and cancelled checks to the extent not already provided.

## Florence Rostami

Florence Rostami Law LLC
The Graybar Building
420 Lexington Avenue, Suite 1402
New York, New York 10170
T 212 209 3962
F 212 209 7100
www.rostamilaw.com

This message contains privileged and confidential information intended solely for the use of
the addressee(s) named above. Any disclosure, distribution, copying or use of the information
by others is strictly prohibited. If you have received this message in error, please notify the
sender by immediate reply and delete the original message. Please note that the English
language of this document is controlling. Thank you. このe-mailの中で英文と日本語文が併
記されている場合は 英文が主文となります 日本語は単に便宜的・補助的に併記され
たもので 解釈の齟齬があった場合には英文の解釈が優先されることを御承知くださ
い )

On Nov 2, 2022, at 7:57 AM, Howard Chun <Howard@kaplanchun.com> wrote:


Hello,

Please see attached documentation.  The disaster loan was paid to Y&S, which
Mr. Kora used to pay attorney fees and debts to the landlord.

On Wed, Oct 26, 2022 at 2:36 PM frostami <frostami@rostamilaw.com> wrote:

None of the documents related to these items were provided—Jung has them so
Mr. Kora can ask him. Was the loan to shareholders for **$135,926** paid to Mr.
Kora or Kobayashi?


*Florence Rostami*

**Florence Rostami Law, LLC**

**The Graybar Building, Suite 1402**

**420 Lexington Avenue**

**New York, New York 10170**

**M (917) 846-0335**

**T (212) 209-3962**

**F (212) 209-7100**

frostami@rostamilaw.com

www.rostamilaw.com

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the addressee(s) named above. Any disclosure, distribution, copying or use of the information by others is strictly prohibited. If you have received this message in error, please notify the sender by immediate reply and delete the original message. Thank you. Please note that the English language of this document is controlling and not the Japanese translation which is provided for your convenience only. この e-mail の中で英文と日本語文が併記されている場合は、英文が主文となります。日本語は単に便宜的・補助的に併記されたもので、解釈の齟齬があった場合には英文の解釈が優先されることを御承知ください。)

**From:** Howard Chun <howard@kaplanchun.com>
**Sent:** Wednesday, October 26, 2022 2:34 PM
**To:** frostami <frostami@rostamilaw.com>
**Cc:** Neal Haber <nhaber@rostamilaw.com>
**Subject:** Re: Y&S, Parkway North, Kora

Hello,

1 and 2 are with Mr. Negita.

3 and 4 are with the accountant. Didn't you already ask for this? We gave the tax records we have.

**\*\*PLEASE NOTE NEW ADDRESS\*\***

Howard Chun
Kaplan & Chun, PC
610 East 5th Street
New York, NY 10009
(212) 777-0320

On Tue, Oct 25, 2022, 12:57 frostami <frostami@rostamilaw.com> wrote:

Howard,

Mr. Kora and Y&S have not provided the below documents which were
requested in the subpoenas:

1. Information and Documents about a loan to shareholders in 2021 for
   $135,926.
2. Documents regarding PPP loans and Economic Injury Disaster
   Loans/Grants Y&S received in 2020 and 2021.
3. W2s, W4s, etc. for Maki, Yasuko, Negita, and Kora for the payrolls for
   all the years required in the Subpoena—request No. 7 for Y&S.
4. W2s for Haruna Maki—she was paid $55,000 in 2021.

*Florence Rostami*

**Florence Rostami Law, LLC**

**The Graybar Building, Suite 1402**

**420 Lexington Avenue**

**New York, New York 10170**

**M (917) 846-0335**

**T (212) 209-3962**

**F (212) 209-7100**

frostami@rostamilaw.com

www.rostamilaw.com

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the addressee(s) named above. Any disclosure, distribution, copying or use of the information by others is strictly prohibited. If you have received this message in error, please notify the sender by immediate reply and delete the original message. Thank you. Please note that the English language of this document is controlling and not the Japanese translation which is provided for your convenience only. この e-mail の中で英文と日本語文が併記されてい る場合は、英文が主文となります。日本語は単に便宜的 に併記されたもので、解釈の 翻齲があった場合には英文の解釈が優先されることを御蒸知く ださい。）

**From:** Howard Chun <howard@kaplanchun.com>
**Sent:** Thursday, October 20, 2022 11:41 AM
**To:** frostami <frostami@rostamilaw.com>
**Cc:** Neal Haber <nhaber@rostamilaw.com>
**Subject:** Re: Y&S, Parkway North, Kora

Hello,

Nothing owned then or now.

**PLEASE NOTE NEW ADDRESS**

-----------------------------------------
Howard Chun
Kaplan & Chun, PC
610 East 5th Street
New York, NY 10009
(212) 777-0320

On Thu, Oct 20, 2022, 11:17 frostami <frostami@rostamilaw.com> wrote:

Howard,

Thank you. Does Parkway North own (or owned at any time) any real
estate?  Its tax return indicates that.


*Florence Rostami*


**Florence Rostami Law, LLC**

**The Graybar Building, Suite 1402**

**420 Lexington Avenue**

**New York,  New York 10170**

**M (917) 846-0335**

**T (212) 209-3962**

**F (212) 209-7100**

frostami@rostamilaw.com

www.rostamilaw.com

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for
the use of the addressee(s) named above. Any disclosure, distribution, copying or use of the
information by others is strictly prohibited. If you have received this message in error,
please notify the sender by immediate reply and delete the original message. Thank you.
Please note that the English language of this document is controlling and not the Japanese
translation which is provided for your convenience only. この e-mailの中で英文と日本語文が
併記されている場合は、英文が主文となります。日本語は単に便宜的・補助的に併記され
たもので、解釈の相違があった場合には英文の解釈が優先されることを御承知くださ
い。）

**From:** Howard Chun <howard@kaplanchun.com>
**Sent:** Thursday, October 20, 2022 8:48 AM
**To:** frostami <frostami@rostamilaw.com>; Neal Haber
<nhaber@rostamilaw.com>
**Subject:** Y&S, Parkway North, Kora


Hello,


Please see attached additional tax returns and bank statements.  There is
nothing available pre 2015.  Records are kept by the bank for up to 7

years.

**PLEASE NOTE NEW ADDRESS**

Howard C. Chun, Esq.

Kaplan & Chun, P.C.

Attorneys at Law

610 East 5th Street

New York, NY 10009

(212) 777-0320

Fax: (212) 674-1729

DISCLAIMER: This message is being sent by or on behalf of a lawyer. It is intended
exclusively for the individual or entity to which it is addressed. This communication
may contain information that is privileged or confidential or otherwise legally exempt
from disclosure. If you are not the named addressee, you are not authorized to read,
print, retain, copy, or disseminate this message or any part of it. If you have
received this message in error, please notify the sender immediately by e-mail and
delete all copies of the message.

**PLEASE NOTE NEW ADDRESS**

Howard C. Chun, Esq.
Kaplan & Chun, P.C.
Attorneys at Law
610 East 5th Street
New York, NY 10009
(212) 777-0320
Fax: (212) 674-1729

DISCLAIMER: This message is being sent by or on behalf of a lawyer. It is intended
exclusively for the individual or entity to which it is addressed. This communication may
contain information that is privileged or confidential or otherwise legally exempt from

disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy, or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

| | |
|---|---|
| **From:** | rostami |
| **To:** | Howard Chun |
| **Cc:** | Neal Haber |
| **Subject:** | cancelled checks |
| **Date:** | Wednesday, April 5, 2023 11:48:00 AM |
| **Importance:** | High |

Howard,

We asked Kora to produce a number of cancelled checks from Y&S chase account: check number 108, 109, 100, and 111. Please produce ASAP.

*Florence Rostami*

**Florence Rostami Law, LLC**
**The Graybar Building, Suite 1402**
**420 Lexington Avenue**
**New York, New York 10170**
**M (917) 846-0335**
**T (212) 209-3962**
**F (212) 209-7100**
frostami@rostamilaw.com
www.rostamilaw.com

This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended solely for the use of the addressee(s) named above. Any disclosure, distribution, copying or use of the information by others is strictly prohibited. If you have received this message in error, please notify the sender by immediate reply and delete the original message. Thank you. Please note that the English language of this document is controlling and not the Japanese translation which is provided for your convenience only. この e-mail の中で英文と日本語文が併記されている場合は、英文が主文となります。日本語は単に便宜的・補助的に併記されたもので、解釈の齟齬があった場合には英文の解釈が優先されることを御承知ください。)

# EXHIBIT 5

## Pages from Transcript of the 9/27/2022 Hearing before the Court

M9R1KEAC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  ORNRAT KEAWSRI, et al.,

4              Plaintiffs,

5         v.                          17 Civ. 2406 (LJL)

6  RAMEN-YA INC., et al.,

7              Defendants.            Contempt Hearing
   ------------------------------x
8                                     New York, N.Y.
                                      September 27, 2022
9                                     3:06 p.m.

10 Before:

11                    HON. LEWIS J. LIMAN,

12                                    District Judge

13                    APPEARANCES

14 FLORENCE ROSTAMI LAW LLC
        Attorneys for Plaintiffs
15 BY:  FLORENCE ROSTAMI, ESQ.

16 VIK PAWAR, ESQ.
   ROBERT BLOSSNER, ESQ.
17      Attorneys for Ramen-ya Defendants

18 KAPLAN & CHUN, PC
        Attorneys for Defendants Y&S and Kora
19 BY:  HOWARD C. CHUN, ESQ.

20 MARTIN J. SIEGEL, ESQ.
        (Present Via Speakerphone)
21
   ALSO PRESENT:  Yasuko Negita
22                 Miho Maki
                   Masahiko Negita (present via speakerphone)
23

24

25

M9R1KEAC

1    They're not transferring any assets.

2            THE COURT:  I'm not gesturing to you, Mr. Pawar.  I

3    saw some fidgeting by Ms. Rostami, and I want her to stop

4    fidgeting so I can focus on you.

5            MR. PAWAR:  Judge, and the order that your Honor put

6    into effect even before a judgment was entered, it has not been

7    violated.  Nothing has happened.  And if there's any examples

8    of that, I will love to see it myself.

9            THE COURT:  Let's go through a couple of examples

10   then.   RYI 6219 statement?

11           MR. PAWAR:  Yes.

12           THE COURT:  There was a deadline for that?

13           MR. PAWAR:  Yes.

14           THE COURT:  Was that complied with?

15           MR. PAWAR:  No, your Honor.

16           THE COURT:  Okay.  So in what respect was my order

17   honored?

18           MR. PAWAR:  It was, Judge -- your Honor, your Honor's

19   order was not complied with.  That is no -- there's absolutely

20   no excuse for it.  It's not easy, Judge, to obtain information

21   from my clients being not -- and I don't want to use that as an

22   excuse, but -- native Japanese speakers and them not being

23   English speakers.  It's not that easy to obtain because they

24   don't understand the actual process and the difficulty and the

25   seriousness of your Honor's order.  I do.  And to answer your

Case 23-12365-SLM   Doc 64   Filed 05/24/23   Entered 05/24/23 09:29:32   Desc Main
Case 1:17-cv-02406-LJL-OTW   Document 658-3   Filed 05/22/23   Page 4 of 6
Document    Page 55 of 86

18

M9R1KEAC

1    question bluntly, some of your orders directing certain things

2    to happen by certain times, it didn't happen.  There's no

3    excuse for that, except for what I just mentioned, but there

4    was no reason -- we were not saying, you know what, just sit

5    back and violate Judge Liman's order because that's what we're

6    going to do.  There was no -- it wasn't intentional, Judge.

7    Eventually it was complied with, and there's no harm or

8    prejudice resulting from that, although it is a harm and a

9    prejudice to violate your Honor's order.  I completely agree

10   with you on that, Judge.  And except for the reasons that I

11   stated, there's no other excuse for it.  But how was it harmed

12   that it was served ten days after your Honor's order, which,

13   with all due respect, Judge, I'm not undermining the fact that

14   a party can't just simply disobey your order; I'm just simply

15   saying that looking at the circumstances, there was no willful

16   noncompliance with your Honor's order or with the subpoena.

17        THE COURT:  Mr. Pawar, let me foreshadow the way in

18   which I think I'm going to come out on this.  I think it's

19   unavoidable that your clients are in contempt of court.  But I

20   hear your argument that there's not been a huge amount of

21   damage done, and we're talking about civil contempt.  I am

22   inclined to impose a sanction, but not a very severe one, not

23   as severe as if there was more extensive evidence of willful

24   disobedience.  But I also intend to, since I believe that they

25   are currently in contempt of court, to impose a contempt

Case 23-12365-SLM   Doc 64   Filed 05/24/23   Entered 05/24/23 09:29:32   Desc Main
Case 1:17-cv-02406-LJL-OTW   Document 658-3   Filed 05/22/23   Page 5 of 6
Document   Page 56 of 86

30
M9R1KEAC

1          All right.  I'm prepared to rule.

2          The Court has in front of it a motion to compel each

3    defendant to comply with the Court's order to produce documents

4    to plaintiffs as judgment creditors and for contempt.  That's

5    at Docket 530.

6          On August 10, 2022, I signed an order granting

7    plaintiff's motion for leave to examine defendants with respect

8    to the nature, extent, and location of their assets, ordering

9    defendants to appear at the offices of plaintiff's counsel for

10   examination on or before August 23, 2022, and ordering

11   defendants to serve the statement required by CPLR 6219 upon

12   plaintiff's counsel on or before August 16, 2022.  Docket 515.

13         What followed was a casebook example of foot dragging

14   and a flouting of court orders.

15         I will address the RYI defendants first and then Y&S.

16         On August 15, 2022, in advance of an agreed-upon date

17   for deposition of the RYI defendants on August 17, 2022,

18   plaintiff's counsel served on each of the RYI defendants a

19   subpoena duces tecum and a subpoena ad testificandum compelling

20   their attendance and requiring them to produce documents

21   relevant to the nature, extent, and location of their assets,

22   whether within or outside of New York.

23         The RYI defendants did not serve their CPLR 6219

24   garnishee statements on or before August 16, 2022, as ordered

25   by the Court.

M9R1KEAC

 1    in part by the fact that when new counsel came in, the spigot

 2    opened up a little bit and some documents were produced.  It's

 3    supported also by the commonsense notion that bank statements

 4    in particular can be obtained by asking the bank to turn over

 5    the statements.  No evidence has been produced to the contrary.

 6          At this stage, as to willfulness, while I believe that

 7    a finding of willfulness is supported, the evidence is not

 8    incredibly strong with respect to willfulness.

 9          And with respect to sanctions and the duration of

10    noncompliance, as I'll make clear, I believe that this sanction

11    I'm about to impose is the lesser sanction that I can impose

12    and that the further sanction that I do intend to impose would

13    be imposed only when the duration of noncompliance causes

14    severe prejudice to the plaintiffs and also makes clearer the

15    extent of willfulness.

16          Finally, with respect to whether the litigant was

17    warned of the consequences of noncompliance, I have warned the

18    litigants, including in the August 25 order and at other times.

19          So with respect to the sanction, I'm imposing a

20    sanction of $5,000 on each of the RYI defendants, to be

21    deposited into the registry of the court by October 7th.  In

22    addition, I am imposing on each of the RYI defendants a further

23    sanction of $1,000 a day for each day that they remain in

24    noncompliance with the Court's order of the 25th by failing to

25    produce the documents requested in the subpoena.  That $1,000 a

# EXHIBIT 6

## Subpoena Served on TD Bank

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
Southern District of New York

| | |
|---|---|
| ORNRAT KEAWSRI et. al., | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 17-CV-2406 |
| RAMEN-YA, INC., Y&S INTERNATIONA, CORP., d/b/a RAMEN-YA, MIHO MAKI, MASAHIKO NEGITA Y. | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  TD Bank
One Vanderbuilt Avenue, New York, New York 10017

*(Name of person to whom this subpoena is directed)*

✅ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE ATTACHED SCHEDULE A

| Place: Florence Rostami Law, LLC | Date and Time: |
|---|---|
| 420 Lexington Avenue, Suite 1402 New York, New York 10170 | 04/28/2023 11:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  04/14/2023

CLERK OF COURT

_____        OR        _____
Signature of Clerk or Deputy Clerk                    Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Ornrat Keawsri, et. al., who issues or requests this subpoena, are:

Florence Rostami, 420 Lexington Ave., Suite 1402, New York, New York 10170, frostami@rostamilaw.com, (212) 209-3962

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 17-CV-2406

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☒ I served the subpoena by delivering a copy to the named person as follows: _____

Hannia Delgado,  Employee of TD Bank at One Vanderbilt Avenue, New York, NY 10017

_____ on *(date)*  **04/14/2023** _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00

I declare under penalty of perjury that this information is true.

Date:   04/14/2023 _____        _____
                                                                        *Server's signature*

                                                Hirofumi Sugano
                                        _____
                                                                        *Printed name and title*

                                        420 Lexington Avenue, Suite 1402, New York, New York 10170
                                        _____
                                                                        *Server's address*

Additional information regarding attempted service, etc.:






Hannia Delgado
Customer Experience Coordinator

**TD Bank**
**America's Most Convenient Bank®**
One Vanderbilt Avenue
New York, NY 10017
T 646 822 6757
F 212 687 0437
hannia.delgado@td.com

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### DEFINITIONS

1.      "Judgment" means the money judgment entered on August 10, 2022 (attached
hereto) in the above-referenced action between Plaintiffs Ornrat Keawsri, Sachina Nagae,
Takayuki Sekiya, Siwapon Topon, Pimparat Ketchatrot, Thiratham Raksuk, Parichat Kongtuk,
Tanon Leechot, Thanatham Kulaptip, Wanwisa Nakwirot, Natcha Natatpisit, and Parada
Mongkolkajit AND Defendants Ramen-Ya Inc., Y&S International Corp., Miho Maki,
Masahiko Negita, Yasuko Negita and Kenji Kora.

2.      "You", "Your", or "Yours" means subpoena respondent TD Bank.

3.      "Judgment Debtor" means Miho Maki and her agents, representatives,
consultants, accountants, attorneys, and any other person or entity acting or purporting to act
on her behalf, including any person who served in any such capacity at any time during the
Relevant Time Period specified herein.

4.      "Maki" means Miho Maki.

5.      "Haruna" means Haruna Maki, an adult daughter of Maki.

6.      "Shona" means Shona Maki, an adult daughter of Maki.

7.      "Account No. ███7250" means a TD Bank account with the account number
4287970250, which account is identified as the account into which two checks signed by Maki
and made payable to Haruna were deposited through TD Mobile Deposit, respectively, on
January 6, 2022 (transaction no. 0308601357) and February 8, 2022 (transaction
no.0269195443).

8.      "Relevant Time Period" means the period from January 1, 2017 to the present.

### DOCUMENT REQUESTS

1.      For each account Maki has maintained with TD Bank during the Relevant Time
Period, whether individually or jointly with any other person, including, without any limitation,

Account No. ████7250, checking and/or saving accounts, certificate of deposit accounts, money market accounts, security accounts, investment accounts, retirement accounts, and/or 401(k) accounts in which Maki has or had a legal or equitable interest during the Relevant Time Period, produce the following documents.

    (a)    All account opening documents, including "know your customer" forms.

    (b)    All monthly account statements.

    (c)    All documents identifying the names of persons other than Maki who are joint owners or are authorized users of the Account, or who have signature authority (including all signature cards).

    (d)    All transaction confirmations, including documents concerning withdrawal, the purchase or sale of securities (including stocks, bonds, structured products, mutual funds, or exchange traded funds), or certificates of deposit.

    (e)    Documents concerning safe deposit boxes held by Maki or which Maki was authorized to access, including documents reflecting the dates that all persons accessed the safe deposit boxes during the Relevant Time Period.

    2.    For all accounts Haruna has maintained with TD Bank during the Relevant Time Period, whether individually or jointly with any other person, including, without any limitation, Account No. ████7250, checking and/or saving accounts, certificate of deposit accounts, money market accounts, security accounts, investment accounts, retirement accounts, and/or 401(k) accounts in which Haruna has or had a legal or equitable interest during the Relevant Time Period, produce the following documents.

    (a)    All account opening documents, including "know your customer" forms.

    (b)    All monthly account statements.

(c)    All documents identifying the names of persons other than Haruna who are joint owners or are authorized users of the Account, or who have signature authority (including all signature cards).

(d)    All transaction confirmations, including documents concerning withdrawal, the purchase or sale of securities (including stocks, bonds, structured products, mutual funds, or exchange traded funds), or certificates of deposit.

(e)    Documents concerning safe deposit boxes held by Haruna or which Haruna was authorized to access, including documents reflecting the dates that all persons accessed the safe deposit boxes during the Relevant Time Period.

3.    For all accounts Shona has maintained with TD Bank during the Relevant Time Period, whether individually or jointly with any other person, including, without any limitation, Account Number ████7250, checking and/or saving accounts, certificate of deposit accounts, money market accounts, security accounts, investment accounts, retirement accounts, and/or 401(k) accounts (each an "Account", collectively "Accounts") in which Shona has or had a legal or equitable interest during the Relevant Time Period, produce the following documents.

(a)    All account opening documents, including "know your customer" forms.

(b)    All monthly account statements.

(c)    All documents identifying the names of persons other than Shona who are joint owners or are authorized users of the Account, or who have signature authority (including all signature cards).

(d)    All transaction confirmations, including documents concerning withdrawal, the purchase or sale of securities (including stocks, bonds, structured products, mutual funds, or exchange traded funds), or certificates of deposit.

(e)     Documents concerning safe deposit boxes held by Shona or which Shona was

authorized to access, including documents reflecting the dates that all persons

accessed the safe deposit boxes during the Relevant Time Period.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

KEAWSRI, et al.,

                              Plaintiffs,

        -against-                                    17 **CIVIL** 2406 (LJL)

                                                          **JUDGMENT**

RAMEN-YA INC., et al.,

                              Defendants.
-----------------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Opinion and Order dated August 8, 2022, Plaintiffs are awarded

$687,825.81 in damages and penalties, $1,110,807.82 in attorneys' fees and costs to Plaintiffs'

counsel, as well as any post judgment interest.

**Dated:** New York, New York

        August 10, 2022

                                              **RUBY J. KRAJICK**
                                    _____
                                              **Clerk of Court**

                        **BY:**     K mango
                                    _____
                                              **Deputy Clerk**

CapitalOne

## Check #128 Cashed

| | |
|---|---|
| Check Number: | #128 |
| Amount: | $5,000.00 |
| Date Posted: | January 6, 2022 |
| Account: | Simply Checking ...6700 |





1/13/23, 5:48 PM

CapitalOne

# Check #129 Cashed

Check Number:        #129
Amount:              $5,000.00
Date Posted:         February 8, 2022
Account:             Simply Checking...6700





UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORNRAT KEAWSRI, SACHINA NAGAE, TAKAYUKI SEKIYA, SIWAPON TOPON, PIMPARAT KETCHATROT, THIRATHAM RAKSUK, PARICHAT KONGTUK, TANON LEECHOT, THANATHARN KULAPTIP, WANWISA NAKWIROT, NATCHA NATATPISIT, and PARADA MONGKOLKAJIT, | INDEX NO.  17-cv-2406 (LJL)(OTW) |
| *Plaintiffs,* | |
| v. | |
| RAMEN-YA INC., Y&S INTERNATIONAL CORP. d/b/a RAMEN-YA, MIHO MAKI, MASAHIKO NEGITA, TOSHIHITO KOBAYASHI, KENJI KORA and YASUKO NEGITA | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER COMMENCING CRIMINAL CONTEMPT PROCEEDINGS AGAINST YASUKO NEGITA, MASAHIKO NEGITA, MIHO MAKI AND KENJI KORA PURSUANT TO 18 U.S.C. § 401 AND/OR FED. R. CRIM. PRO. 42 FOR CONTINUOUS CONTEMPT OF ORDERS OF THE COURT**

Florence Rostami
Neal Haber

FLORENCE ROSTAMI LAW, LLC
Attorneys for Plaintiffs
420 Lexington Avenue, Suite 1402
New York, New York 10170
(212) 209-3962

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. 2

FACTS RELATED TO THIS MOTION................................................................... 1

ARGUMENT ......................................................................................................... 4

      I.      THE COURT POSSESSES AUTHORITY TO IMPOSE CRIMINAL
             CONTEMPT SANCTIONS AGAINST A PARTY THAT DEFIES
             THE COURT'S ORDERS AND/OR ITS OBLIGATIONS IN THE
             PROCEEDING .......................................................................... 4

      II.     CRIMINAL SANCTIONS CAN, AND IN THIS MATTER SHOULD
             CONSIST OF IMPRISONMENT FOR A DEFINITIVE TERM............6

      III.    NOTWITHSTANDING THE NEGITAS' COMMENCEMENT OF A
             BANKRUPTCY PROCEEDING IN NEW JERSEY, THIS COURT
             HAS JURISDICTION TO IMPOSE SANCTIONS FOR CRIMINAL
             CONTEMPT AGAINST THEM FOR THEIR PRE-BANKRUPTCY
             PETITION CONDUCT..................................................................10

CONCLUSION ....................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACLI Government Securities, Inc. v. Rhoades*, 989
F.Supp. 462 (S.D.N.Y. 1997), *aff'd* 159 F.3d 1345
(1998)..................................................................................................... 5, 6

*Brock v. Morysville Body Works, Inc.*, 829 F.2d 383,
(3d Cir. 1987)........................................................................................... 10

*Dominic's Restaurant of Dayton, Inc. v. Mantia*,
683 F.3d 757 (6th Cir., 2012) ............................................................... 10

*Gompers v. Bucks Stove & Range Co.*, 221 U.S.
418, 31 S.Ct. 492 (1911)....................................................................... 8, 9

*Howat v. Kansas*,258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550
(1922)....................................................................................................... 4

*In re Baldwin-United Corp. Litigation*, 765 F.2d
343 (2 Cir. 1985).................................................................................... 10

*In re Berg*, 230 F.3d 1165 (9th Cir. 2000) ................................................. 10

*In re Maloney*, 204 B.R. 671 (Bankr. E.D.N.Y.1996) ............................... 11

*In re Newman*, 196 B.R. 700 (Bankr. S.D.N.Y.1996) ............................... 12

*In re Weiss*, 703 F.2d 653 (2d Cir. 1983)..................................................... 9

*Loc. 807 Lab. Mgmt. Pension Fund v. City Elevator Corp.*,
No. 2021 WL 7906554 (E.D.N.Y. Sept. 17, 2021)............................... 8

*Motorola Credit Corporation v. Kemal Uzan*, 2007
WL 1098689 (S.D.N.Y. 2007) ................................................................. 6

*NLRB v. Edward Cooper Painting, Inc.*, 804
F.2d 934 (6th Cir.1986) ..................................................... 10

*NLRB v. Sawulski*, 158 B.R. 971 (E.D. Mich
1991) .................................................................. 11

*O'Brien v. Fischel*, 74 B.R. 546, 550 (D. Haw. 1987) ................................. 10

*S.E.C. v. Bilzerian*, 131 F.Supp.2d 10 (D.D.C. 2001),
*aff'd* 75 Fed.Appx. 3 (D.C. Cir. 2003) ........................................ 10, 11

*Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir.2009) .................... 10

*United States v. Coulton*, 2013 WL 12086298 (S.D.
Fla., Feb. 1. 2013) ........................................................ 10

*United States v. Donziger*, 2021 WL 3141893
(S.D.N.Y. July 26, 2021), *aff'd*, 38 F.4th 290
(2d Cir. 2022 .............................................................. 5

*United States v. Hughey*, 571 F.2d 111 (2d Cir. 1978) ................................ 9

*United States v. Patterson*, 219 F.2d 659 (2d Cir. 1959)
.................................................................................... 5

*United States v United Mine Workers of Am.*, 330 US
258, 67 S Ct 677, 91 L Ed 884 (1947) ...................................... 4

*United States Sec. & Exch. Comm'n v. Bronson*,
2022 WL 5237474 (2d Cir. Oct. 6, 2022) ................................... 8

*US Sprint Communications Co. v. Buscher*, 89 B.R.
154 (D.Kan. 1988) ............................................................................................... 11

**Statutes and Regulations**

11 U.S.C. § 362(a) ............................................................................................... 9, 11

11 U.S.C. § 362(b) .................................................................................................. 9

11 U.S.C. § 362(b)(1) ......................................................................................... 9, 12

11 U.S.C. § 362(b)(4) .............................................................................................. 12

18 U.S.C. § 401 .................................................................................................. 1, 8

29 U.S.C. § 201 ...................................................................................................... 2

Fed. R. Civ. P. 69 ................................................................................................... 1

Fed. R. Crim.. P. 42 ............................................................................................... 1

NY Labor Law  § 651.............................................................................................2

NY Labor Law  § 652 .............................................................................................. 2

NY Hospitality Wage Order, 12 NYCRR Part 146 ........................................................ 2

NY Labor Law § 196-d............................................................................................ 2

Plaintiffs (hereinafter "Plaintiffs" or "Judgment Creditors") respectfully submit this Memorandum of Law in support of their motion for commencement of proceedings pursuant to 18 U.S.C. § 401 and/or Fed. R. Crim. P. 42 against Defendants/Judgment Debtors Yasuko Negita ("Yasuko"), Masahiko Negita ("Negita"), and Miho Maki ("Maki") in their individual capacity and in their capacity as owners, directors, officers or agents of Defendant/Judgment Debtor Ramen-Ya Inc. ("RYI") and against Kenji Kora ("Kora") in his individual capacity and in his capacity as owner, director, officer, or agent of Y&S International Corp. ("Y&S") for adjudication that they are in *criminal contempt* of the Court because (a) of *their continued disobedience of and refusal to comply* with the lawful orders and commands of this Court with respect to post-judgment discovery dated August 25, 2022 [DE 523] and September 30, 2022 [DE 560] and as stated by the Court at the hearings held before the Court on September 27 and November 23, 2022 (collectively, "Orders and Commands"), (b) of their blatant attempts to hide their assets from Judgement Creditors, and (c) for their making of false and/or materially misleading statements and representations to this Court, with sanctions for such criminal contempt to include *imprisonment* as provided by law; and (ii) an order providing such other and further relief as the Court deems is just and proper.

## **FACTS RELATED TO THIS MOTION**

The facts related to this Motion are set forth in the accompanying Declaration of Florence Rostami ("Decl.") and exhibits annexed thereto, and in the Declaration and Reply Declaration of Florence Rostami filed in support of Plaintiffs/Judgment Creditors' Motion Pursuant to Fed.R.Civ.P. 69 and Applicable New York Statutes [DE 633 and DE 641] and the exhibits annexed thereto.

1

In brief, on August 10, 2021, this Court issued an Opinion and Order [DE 419] in which it
determined that RYI, Y&S, Negita, Maki, Y&S, and Kora had violated the Fair Labor Standards
Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law §§ 196-d, 651, 652 ("NYLL"),
and the New York Hospitality Wage Order, 12 N.Y.C.R.R. Part 146 ("Hospitality Wage Order"),
collectively the "Wage Payment Laws", in numerous respects with regard to Plaintiffs, and that
they were jointly and severally liable to Plaintiffs for damages, penalties, attorney's fees and post-
judgment interest. On July 11, 2022, after a trial on the issue of Yasuko's "employer" status, the
Court rendered an oral decision ruling that Yasuko was an "employer" of Plaintiffs and was also
jointly and severally liable to Plaintiffs. On August 8, 2022, the Court issued an Opinion and Order
determining that Yasuko, Negita, Maki, Kora, RYI and Y&S are jointly and severally liable to
Plaintiffs in the amount of $687,825.81 in damages and penalties, $1,110,807.82 in attorney's fees,
and post-judgment interest. [DE 512] On August 10, 2022, the Court issued a judgment
("Judgment") [DE 514] and an Order enjoining Judgment Debtors from dissipating assets out of
the reach of Plaintiffs to satisfy the Judgment.[1] [DE 515]

Following the Court's issuance of the Judgment, Judgment Creditors began their efforts to
locate Judgment Debtors' assets and to collect the monies to which they are entitled. However,
Judgment Debtors dodged their obligations to produce documents and information about their
assets, which resulted in the Court's finding that Yasuko, Negita, Maki and RYI were in criminal
contempt, for which they were fined $5,000 each. [DE 560] Thereafter, because they continued to
defy their discovery obligations, Judgment Creditors were forced to file yet another motion [DE
574] for contempt, and on December 12, 2022, the Court issued yet another decision finding
Yasuko, Negita, and Maki had breached their obligations to produce documents (except for limited

---

[1] This Order confirmed the Court's temporary restraining order dated July 29, 2022 prohibiting the dissipation of
Judgment Debtors' assets. [DE 505]

documents that may be subject to a Fifth Amendment privilege against incrimination). [DE 605] Even after that Order, Judgment Debtors have continued to defy disclosure obligations.

Further, through their independent investigation, Judgment Creditors discovered additional assets that should have been disclosed and active attempts by Yasuko, Negita, Maki, and Kora to hide theirs and the corporations' assets by utilizing bank accounts in the name of Maki's daughter, Haruna Maki ("Haruna"), and by payments totaling several hundred thousands of dollars to Kil S. Jung (the long-time accountant for each of the Judgment Debtors), by Kil S. Jung transferring $150,000 to Kora by check, and by loans to their relatives. Judgment Creditors filed another motion, seeking a determination that Kuraku is the *alter ego* of RYI and that use of the Haruna accounts and money transferred to Kil S. Jung were parts of Judgment Debtors' scheme to defraud Plaintiffs. [DE 632] This motion was supported by a declaration [DE 633] with exhibits [DE 633-1 to DE 633-31] and a reply declaration [DE 641] with exhibits [DE 641-1 to DE 641-11]. On May 18, 2023, the Court held a hearing on this motion at which Maki acknowledged that between 2017 and 2023 an account in Haruna's name at TD Bank was not used by Haruna but was instead used for depositing cash from RYI and Y&S [Decl. ¶¶ 63-64]; this account was also used between 2017 and 2023 to invest money in Kuraku, pay Yasuko, and transfer funds to Kil S. Jung. [DE 641-1 to DE 641-10] This hearing has been continued to June 26, 2023. [Decl. ¶ 63]

Yasuko, Negita, Maki, and Kora have contemptuously ignored their obligations in this proceeding and have defied successive orders of this Court. Previous orders, including the finding of criminal contempt and the imposition of fines [DE 560] have not served to change their conduct. Judgment Creditors therefore seek another finding of criminal contempt, this time with the imposition of imprisonment for a definitive term, so that Judgment Debtors (and other defendants where violation of the Wage Payment Laws are found) will not defy their obligations to provide

3

full disclosure of assets and to pay to successful plaintiffs (usually low wage workers) all amounts

due to them.

## **ARGUMENT**

### I.  **THE COURT POSSESSES AUTHORITY TO IMPOSE CRIMINAL CONTEMPT SANCTIONS AGAINST A PARTY THAT DEFIES THE COURT'S ORDERS AND/OR ITS OBLIGATIONS IN THE PROCEEDING**

More than seventy-five years ago, the United States Supreme Court made it abundantly

clear that a federal court possesses the authority to impose criminal sanctions against a party that

defies its orders and/or engages in contumacious conduct:

> Proceeding further, we find impressive authority for the proposition that *an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.* This is true without regard even for the constitutionality of the Act under which the order is issued. In *Howat v. Kansas*, 1922, 258 U.S. 181, 189, 190, 42 S.Ct. 277, 280, 281, 66 L.Ed. 550, this Court said: An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them, however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected. *Violations of an order are punishable as criminal contempt* even though the order is set aside on appeal or though the basic action has become moot.

*United States v United Mine Workers of Am.*, 330 US 258, 293-94, 67 S Ct 677, 696, 91 L Ed 884

(1947)(internal citations and quotation marks, and footnotes are omitted)(emphasis added). That a

party might be held in civil contempt for failure to engage in discovery or for other improper

actions during litigation does not negate the authority of the court to impose sanctions for criminal

contempt. See *United States v. Donziger*, 2021 WL 3141893, at *85 (S.D.N.Y. July 26,

2021), *aff'd*, 38 F.4th 290 (2d Cir. 2022)("A court's vindicating its authority by punishing past

violations of its orders is such a permissible end, however, and it is hornbook law that the same

4

contemptuous act can subject a contemnor to <u>both</u> civil and criminal sanctions."(emphasis in original)) In affirming the trial court in *Donziger*, the Second Circuit succinctly noted:

> . . . the district court did not abuse its discretion by punishing Donziger for his past disobedience of court orders, even if it had since been cured. Criminal contempt punishes 'retrospectively for a completed act of disobedience, such that the contemnor cannot avoid or abbreviate the confinement through later compliance.' *Bagwell*, 512 U.S. at 828–29, 114 S.Ct. 2552 (cleaned up). Unlike civil contempt, which is aimed at 'compel[ling] future compliance with a court order' and is 'remedial[ ] and for the benefit of the complainant,' criminal contempt is 'punitive' and meant to 'vindicate the authority of the court.' Id. at 827–28, 114 S.Ct. 2552. Here, 'the end proposed' was not compliance with court orders but punishment for past disobedience and vindication of the court's authority. It is therefore beside the point that Donziger eventually complied with most of the court orders underlying his criminal contempt conviction.

*United States v. Donziger*, 38 F.4th 290, 305 (2d Cir. 2022).

It has long been held that a party's failure to produce documents in their custody or control constitutes sufficient grounds for a finding of criminal contempt. *United States v. Patterson*, 219 F.2d 659, 660 (2d Cir. 1959)("The law of criminal contempt is clear that no individual may refuse to surrender existing documents of a corporation or association if they be within his control.) Where a defendant repeatedly fails to comply with or make reasonable efforts to comply with document production orders related to collection of a judgment, referral of that defendant for prosecution for criminal contempt will be directed. See *ACLI Government Securities, Inc. v. Rhoades*, 989 F.Supp. 462, 468 (S.D.N.Y. 1997), *aff'd* 159 F.3d 1345 (1998) (citations omitted), in which Judge Shira Scheindlin referred the defendants for criminal contempt sanctions where they contumaciously defied their production obligations with respect to enforcement of a money judgment:

> I do not lightly refer any litigant to the United States Attorney for prosecution of misconduct before this Court. Yet as the Supreme Court declared long ago,
>
> > [i]f a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the

courts impotent, and what the Constitution now fittingly calls "the judicial
power of United States" would be a mere mockery.

Continued contempt of court is a public offense that undermines the efficiency,
authority and purpose of the judicial branch. Given all the circumstances of this
case, and defendants' repeated misconduct, it would be unfair to the members of
the bar and to society in general to ignore their obdurate contempt of the Orders of
this Court.

Furthermore, Daniel Rhoades has made a practice of complying with court orders
at the eleventh-hour, after having been found in contempt and after plaintiff has
been required to tender $2,500 for the United States Marshal to execute a bench
warrant for the arrest of Daniel Rhoades. At the May 7 pre-motion conference,
plaintiff's counsel stated that he believed that Daniel Rhoades would continue to
evade civil contempt sanctions in this manner, and that criminal sanctions were
necessary to force him to obey the commands of the Court. I agree.

See also *Motorola Credit Corporation v. Kemal Uzan*, 2007 WL 1098689, at *3 (S.D.N.Y. 2007)

(Rakoff, J.)(court refused to vacate arrest warrants imposed on defendants who defied post-

judgment discovery even assuming the transfer of assets for which discovery was sought was no

longer meaningful (citing *ACLI Government Securities, Inc.*)).

In the instant case, Yasuko, Negita, Maki and Kora have repeatedly flouted their

obligations to engage in full and proper discovery of their assets to be used to satisfy the Judgment,

have engaged in duplicitous conduct to hide their assets both after the Judgment was entered and

prior to entry of the Judgment when they knew their joint and several liability was substantial and

certain, and have defied repeated orders of this Court, including a previous criminal contempt

order. Thus, it is fully within the Court's authority to impose severe criminal sanctions against

each of these individuals.

## II.    CRIMINAL SANCTIONS CAN, AND IN THIS MATTER SHOULD, CONSIST OF IMPRISONMENT FOR A DEFINITIVE TERM

Judgment Creditors do not seek a finding of civil contempt against Yasuko, Negita, Maki,

and Kora. Plaintiffs have already obtained numerous orders against Judgment Debtors to comply

with their obligations to produce documents and information and to make payments to satisfy the

6

Judgment. The docket entries in this matter amply demonstrate Judgment Debtors' obdurate resistance to the Court's jurisdictions and orders throughout this litigation, *which commenced more than six years ago*, and especially after their joint and several liability to Plaintiffs was clear. The docket entries even more starkly demonstrate Judgment Debtors' defiance of their obligations in post-judgment proceedings, including post-judgment discovery, and their contumacious defiance of this Court's previous orders. [Decl. ¶¶ 28-53] The Court has already imposed criminal sanctions against the Negitas, Maki, and RYI, of a $5,000 and $1,000 (in case of Y&S and Kora) fine against each of them. [DE 560] Each of them paid the criminal contempt fines imposed by the Court but continued their defiant conduct.

At the September 27, 2022 hearing prior to imposition of the criminal contempt sanction, the Court stated:

> I think it's unavoidable that [RYI Judgment Debtors] are in contempt of court. ...I am inclined to impose a sanction, but not a very severe one, *not as severe as if there was more extensive evidence of willful disobedience.*

> On August 10, I signed an order granting plaintiff's [sic] motion for leave to examine defendants with respect to nature, extent, and location of their assets.... What followed was a casebook example of foot dragging and a flouting of court orders.

> At this stage [September 27, 2022], as to willfulness, while I believe that a finding of willfulness is supported, the evidence is not incredibly strong with respect to willfulness. ... *I believe that this sanction I'm about to impost is the lesser sanction that I can impose and that the further sanction that I do intend to impose would be imposed only when the duration of noncompliance causes severe prejudice to the plaintiffs and also makes clearer the extent of willfulness....I have warned the litigations, including in the August 25 order and at other times.*

Decl. ¶ 37. The Court's repeated warnings have been ignored—only imprisonment of the recalcitrant Judgment Debtors will vindicate the dignity of this Court.

The Court has the authority to impose the penalty for criminal contempt of imprisonment
for a stated and definite period of time. As the Second Circuit stated in *United States Sec. & Exch.*
*Comm'n v. Bronson*, 2022 WL 5237474, at *3 (2d Cir. Oct. 6, 2022), where the appellate court
affirmed the trial court's order to imprison the defendant for his failure to abide by several orders
to make payments to the SEC pursuant to a judgment issued against him: "In any event, '[a] court
of the United States shall have power to punish *by fine or imprisonment*, or both, at its discretion,
such contempt of its authority, and none other, as ... [d]isobedience or resistance to its lawful writ,
process, order, rule, decree, or command." 18 U.S.C. § 401." (emphasis added).

The Second Circuit has indisputably stated that the purpose of criminal contempt sanctions
is to vindicate the authority of the court. See *In re Weiss*, 703 F.2d 653, 661 (2d Cir. 1983) citing
to *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498 (1911): "It is not
the fact of punishment but rather its character and purpose that often serve to distinguish between
the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit
of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the
authority of the court."; *Loc. 807 Lab. Mgmt. Pension Fund v. City Elevator Corp.*, No. 2021 WL
7906554, at *1 (E.D.N.Y. Sept. 17, 2021)("The main difference between civil and criminal
contempt is the court's underlying purpose. While criminal contempt seeks to punish the
contemnor, deter future offenses, or vindicate the authority of the court, civil contempt is used to
coerce compliance with the court's order or compensate the complaining party for losses incurred
resulting from the contemnor's conduct." (citations and internal quotation marks omitted)).

Further, the Second Circuit has made clear that unlike imprisonment for civil contempt,
which the contemnors can purge by complying with their obligations, criminal contempt sanctions
are properly sanctioned by imprisonment for a definitive length of time:

The difference between a sentence for civil contempt and a sentence for criminal contempt, however, is not a difference in the language of the contempt citations, but in the intended effects of the orders, punishment (criminal contempt) or coercion (civil contempt). See *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441-43, 31 S.Ct. 492, 55 L.Ed. 797 (1911). To achieve the purpose of a criminal contempt citation, punishment for acts of disobedience, the proper sanction is imprisonment for a definite period of time. On the other hand, the appropriate civil contempt remedy for refusal to provide testimony is imprisonment until the testimony is supplied or the trial ends.

*United States v. Hughey*, 571 F.2d 111, 114 (2d Cir. 1978)(Second Circuit affirmed the district court's order to incarcerate a witness who refused to testify at trial even though the witness was given immunity against self-incrimination)

In this case, the Court has already imposed fines for criminal contempt against Judgment Debtors, but this penalty has not resulted in any appreciation of their obligations to comply with orders of the Court and to engage in full compliance with their disclosure obligations and to make payments toward satisfaction of the Judgment. Yasuko, Negita, Maki, and Kora have rendered this Court impotent and their contemptuous conduct is a mockery of the judicial system. This motion is brought solely to vindicate the authority of this Court, of which counsel for all parties are officers and thus responsible for upholding its integrity, and for future employees who may suffer at the hands of unscrupulous employers.

### III. NOTWITHSTANDING THE NEGITAS' COMMENCEMENT OF A BANKRUPTCY PROCEEDING IN NEW JERSEY, THIS COURT HAS JURISDICTION TO IMPOSE SANCTIONS FOR CRIMINAL CONTEMPT AGAINST THEM FOR THEIR PRE-BANKRUPTCY PETITION CONDUCT

The filing of a bankruptcy petition generally operates as a stay of judicial, administrative, or other actions against the bankruptcy debtor. Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a). However, the protection accorded by § 362(a) does not apply to criminal proceedings. Section 362(b)(1) of the Bankruptcy Code, 11 U.S.C. § 362(b)(1) states:

9

(b) The filing of a petition under sections 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay——

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor . . .

As stated in *United States v. Coulton*, 2013 WL 12086298 at *9 (S.D. Fla., Feb. 1. 2013)("Indeed, "[t]his exemption 'prevent[s] the bankruptcy court from becoming a haven for wrongdoers.'" *In re Berg*, 230 F.3d 1165, 1167 (9th Cir. 2000) (quoting *O'Brien v. Fischel*, 74 B.R. 546, 550 (D. Haw. 1987))").

In *Dominic's Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6ᵗʰ Cir., 2012), the Sixth Circuit succinctly explained the interplay between the automatic stay provision of § 362(a) and the exceptions under § 362(b), and also made clear that it is the court in which the judicial proceeding is pending—not the bankruptcy court—that makes the determination of whether the automatic stay applies:

> As a general rule, the filing of a bankruptcy petition operates to stay, among other things, the continuation of a judicial proceeding against the debtor that was commenced before the petition. See 11 U.S.C. § 362(a)(1); In re *Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 901 n. 5 (6th Cir.2009). But the automatic stay protection does not apply in all cases; there are statutory exemptions, and there are non-statutory exceptions. The court in which the judicial proceeding is pending—in this case, the district court below—has jurisdiction to decide whether the proceeding is subject to the stay. See *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir.1986).

The Second Circuit follows this principle. *In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 347 (2 Cir. 1985)("The initial issue is whether the District Court has jurisdiction to determine the applicability of the automatic stay. We conclude that it does.") Courts in other circuits have adopted this position. See *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 387 (3d Cir. 1987); *United States v. Coulton*, *supra* at *8; *S.E.C. v. Bilzerian*, 131 F.Supp.2d 10, 13-14 (D.D.C. 2001)(citing cases), *aff'd* 75 Fed.Appx. 3 (D.C. Cir. 2003).

10

The district court in *Bilzerian* held that it retained jurisdiction over a defendant even after that defendant filed for bankruptcy, since the conduct of that defendant required sanction in order to vindicate the authority of the court. Specifically, the court in *Bilzarian* stated (at pp. 14-15):

> This is part of a civil contempt proceeding against Bilzerian. There are, however, two kinds of civil contempt proceedings—those to enforce payment of a judgment and those to uphold the dignity of the court. *[N.L.R.B. v.] Sawulski*, 158 B.R. [971] at 975 [E.D. Mich. 1991]. "Only contempt orders to uphold the dignity of the court are excepted from the automatic stay." *Id.* A prime example of such a contempt order is found in *US Sprint Communications Co. v. Buscher*, 89 B.R. 154 (D.Kan.1988). The court found Buscher in civil contempt of a preliminary injunction, but before the court sentenced him on that contempt, Buscher filed for bankruptcy. The court found that the automatic stay provision did not bar its sentencing (which consisted of civil contempt fines), after finding that:
>
> > this is not just any judicial proceeding. This court has already determined that defendant violated two direct orders of this court. It is within this court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders.
>
> *Id.* at 156. Similarly, in *Sawulski*, 158 B.R. at 977, the Special Master found that proceedings to determine whether defendant had purged himself of contempt were not barred by the automatic stay, after finding that the primary purpose of the contempt proceeding was to vindicate the dignity and authority of the court.
>
> The Court finds that this contempt proceeding clearly is to vindicate the integrity of the Court. The Court has previously found Bilzerian in contempt of its 1993 disgorgement orders, and, as will be discussed in this Opinion, he has not complied even minimally with the Court's temporary purgation conditions. The Court has inherent power to ensure compliance with its orders. As the *Buscher* court stated:
>
> > The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is not free to run rampant in flagrant disregard of the powers of the court.

See *In re Maloney*, 204 B.R. 671, 674 (Bankr. E.D.N.Y.1996)("Courts consistently have held that civil contempt orders fall within the scope of the automatic stay under section 362(a) of the Bankruptcy Code, but that criminal contempt orders do not. . . . Criminal contempt orders, which

are purely punitive, are outside the scope of the automatic stay whose purpose is to protect the estate for the benefit of creditors and promote the estate's orderly disposition.")(citations omitted); *In re Newman*, 196 B.R. 700, 704 (Bankr. S.D.N.Y. 1996)("Criminal cases and proceedings by governmental agencies to enforce police and regulatory powers are exempted from the automatic stay. 11 U.S.C. § 362(b)(1), (4). This exemption includes proceedings to punish a debtor for criminal contempt")(citations omitted).

In this case, it is irrefutable that Yasuko and Negita have flouted the orders of this Court and their discovery obligations. Criminal contempt has already been assessed against them (and against other Judgment Debtors) in the form of fines, but they have continued their duplicitous conduct. Further, prior to their bankruptcy filing, the Negitas made numerous materially false and misleading statements and actively engaged in hiding their assets and the assets of RYI and Y&S. Imposition of criminal contempt sanctions against them are necessary to vindicate the dignity of this Court and to deter them and other defendants in Wage Payment Law cases from evading their obligation to comply with court orders and to pay to workers what they are rightly owed.

## CONCLUSION

Plaintiffs respectfully submit that, upon full consideration of Plaintiffs' motion, including the declaration and exhibits filed herewith and the entirety of the record in this matter, the Court should grant Plaintiffs' motion and conclude that initiation of criminal contempt proceedings is warranted against Yasuko, Negita, Maki, and Kora for their contumacious conduct that offends the dignity of this Court and the judicial process.

Dated: New York, New York
       May 22, 2023

                              Respectfully submitted,

                              FLORENCE ROSTAMI LAW LLC

12

Attorneys for Plaintiffs

By:   ___/s/ Florence Rostami___
      Florence Rostami
      Neal Haber
      420 Lexington Avenue, Suite 1402
      New York, New York 10170

      (212) 209-3962