UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**TRAURIG LAW LLC**
Jeffrey M. Traurig, Esq.
One University Plaza, Suite 124
Hackensack, New Jersey 07601
(646) 974-8650 (Telephone)

*Co-counsel to Judgment Creditors*

**FLORENCE ROSTAMI LAW LLC**
Florence Rostami (*admitted pro hac vice*)
Neal Haber (*admitted pro hac vice*)
420 Lexington Avenue, Suite 1402
New York, New York 10170
T (212) 209-3962
F (212) 209-7101

*Lead Counsel to Judgment Creditors*

In re:

Masahiko and Yasuko Negita,

                Debtors.

Case No.: 23-12365 (SLM)

Chapter 11

Hon. Stacey L. Meisel U.S.B.J.

Hearing Date: June 13, 2023 at 11:00 a.m.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDERS (i) TO STRIKE MASAHIKO NEGITA FROM SUBCHAPTER V; (ii) THAT THE BANKRUPTCY ESTATES OF MASAHIKO NEGITA AND YASUKO NEGITA ARE NOT SUBSTANTIVELY CONSOLIDATED AND SHALL BE SEPARATELY DETERMINED; and (iii) TO HOLD THAT DEBTORS ARE NOT ENTITLED TO ANY EXEMPTION WITH RESPECT TO THE IRA AND SEP IRA ACCOUNTS LISTED IN DEBTORS' <u>SCHEDULES</u>**

      1.      This memorandum of law is filed in support of the instant motion on behalf of

Creditors Ornrat Keawsri, Sachina Nagae, Takayuki Sekiya, Siwapon Topon, Pimparat Ketchatrot,

1

Thiratham Raksuk, Parichat Kongtuk, Tanon Leechot, Thanatharn Kulaptip, Wanwisa Nakwirot, Natcha Natatpisit, and Parada Mongkolkajit ("**Judgment Creditors**") in support of the Motion to enter an order (i) pursuant to Fed.R.Bankr.P. 1020(b) to strike designation of Masahiko Negita ("Masahiko") as a "small business debtor" whose estate is to be administered pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code; (ii) that the consolidated petition of Yasuko Negita ("Yasuko") and Masahiko (jointly "Debtors") filed with this Court for bankruptcy has created and should be maintained as two separate estates that cannot be substantively consolidated and should be disaggregated and determined separately; and (iii) that pursuant to Fed.R.Bankr.P. 4003, Debtors are not entitled to any exemptions for any amount of the assets of the IRA: Merrill Lynch and SEP IRA: Merrill Lynch accounts listed on Schedule C, page 6 of the Summary of Your Assets and Liabilities and Certain Statistical Information (the "Schedule")[Doc. 19].

### **MASAHIKO IS NOT ELIGIBLE TO PROCEED UNDER SUBCHAPTER V**

2. Debtors have filed a consolidated Voluntary Petition in Bankruptcy pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code ("Subchapter V"). By this filing, Yasuko and Masahiko assert that they are jointly "engaged in commercial or business activities" within the definition of that term in 11 U.S.C. § 101(51D) and 11 U.S.C. § 1182(1), and that consequently they are both "small business debtors" within the meaning of the Bankruptcy Code and thereby may proceed under Subchapter V. However, the facts belie this position. Masahiko is not a "small business debtor" since he is not "engaged in business or commercial activities" to be accorded the provisions of Subchapter V.

3. Central to the determination of Masahiko's status (or absence of status) under Subchapter V is the business entity known as Ku-Raku New York, Inc. ("Kuraku"), a New York corporation that operates a restaurant located at 3952 Broadway, New York, New York. Kuraku

was formed in 2018. As stated in Kuraku's 2018 federal income tax return (for its 2018 fiscal year ending September 30, 2019) and in Kuraku's 2019 federal income tax return (for its fiscal year ending September 30, 2020) and 2020 federal income tax return (for its fiscal year ending September 30, 2021), Yasuko owns 100 percent of the outstanding shares of Kuraku. [Exhibit 1 annexed to Florence Rostami Declaration ("FR Decl.")] The incorporation documents for Kuraku, dated October 2018, state that Yasuko owns 90 percent of the outstanding shares of Kuraku and is Kuraku's president, and that another individual, Miho Maki ("Maki") owns the remaining 10 percent and is the secretary of Kuraku. [Exhibit 2 annexed to FR Decl.] Whether Yasuko owns 90 percent of the outstanding shares of Kuraku, or 100 percent of its shares, it is indisputable that she owns a substantial majority or all of the shares of Kuraku and is Kuraku's president. Consequently, it is indisputable that Yasuko is engaged in commercial or business activities and is a "small business debtor" as defined in Section 1182(1) and Section 101(51D).

4.     However, the same cannot be said of Masahiko. Masahiko holds no ownership interest in Kuraku. Masahiko is not an officer or director of Kuraku. Rather, Masahiko is an employee of Kuraku, who is compensated solely by a salary subject to employee withholdings and deductions.  In the third quarter of 2022, Masahiko was paid gross wages by Kuraku of $5,200.00; in the fourth quarter of 2022, he was paid gross wages of $8,400.00; and in the first quarter of 2023, he was paid gross wages of $10,500.00. [Exhibit 3 annexed to FR Decl.]

5.     During these same quarters, Yasuko (who is the majority owner and president of Kuraku) received the following compensation: in the third quarter of 2022, Yasuko was paid gross wages by Kuraku of $23,000.00; in the fourth quarter of 2022, she was paid gross wages of $18,000.00; and in the first quarter of 2023, she was paid gross wages of $21,000.00. Maki (who is the secretary of Kuraku and may hold an ownership interest in Kuraku) received the following

3

compensation: In the third quarter of 2022, Maki was paid gross wages by Kuraku of $18,000.00; in the fourth quarter of 2022, she was paid gross wages of $13,500.00; and in the first quarter of 2023, she was paid gross wages of $20,500.00. [Exhibit 3 to FR Decl.]

6. As reflected in Exhibit 3, Masahiko was paid far less than Yasuko and Maki, and indeed less than other employees of Kuraku. Masahiko's name does not appear in any corporate documents as a corporate representative or agent of Kuraku, including with respect to the formation of Kuraku or at any time thereafter. Thus, it can only be concluded that Masahiko is not engaged in commercial or business activities with respect to Kuraku.

7. Merely being employed by a business, including a business that has filed for bankruptcy protection, does not establish that a bankruptcy debtor is "engaged in commercial or business activities" so as to accord a person the ability to proceed under Subchapter V. "Subchapter V is entitled 'Small Business Debtor Reorganization' and the definition of who is eligible to use it must be construed in that context. The common use of language does not equate ordinary employment with a small business, and therefore the Court finds that the Debtor's employment by OPTUM does not constitute engaging in commercial or business activities within the meaning of *Section 1182(1)(A)*." *In re Rickerson*, 636 B.R. 416, 426 (Bankr. W.D. Pa. 2021)(an employee who is not an owner, director, officer or manager of a business is not engaged in commerce and commercial activity).

8. *Rickerson* further held that even if, *arguendo*, the court accepts that an employee could be engaged in commerce or business activity, the debtor must prove that at least 50 percent of his debt arises from his employment. Masahiko's debt delineated in the Schedule (including claims from the New York State Department of Taxation, student loans, and the money owed to Judgment Creditors) do not arise from the business of Kuraku, a non-debtor, for which Debtors

4

are requesting reorganization or any business activity of which business Masahiko was an owner, director, officer, or manager.

9. Should there be any doubt that Masahiko does not have a managerial role in Kuraku, Masahiko has the burden of proof to prove otherwise. "It has generally been held that the burden of proof in establishing eligibility for bankruptcy relief lies with the party filing the bankruptcy petition. *See In re RS Air LLC,* 638 B.R. 403, 414 (9th Cir. BAP 2022); *In re Dille Family Trust,* 598 B.R. 179, 189 (Bankr. W.D. Pa. 2019). The large majority of the cases that have considered issues of eligibility specific to Subchapter V have adopted that same view. *See, e.g.*, *In re Blue*, 630 B.R. 179, 187 (Bankr. M.D.N.C. 2021) (citing cases), *In re Wright*, 2020 WL 2193240, at *2 (Bankr. D.S.C. Apr. 27, 2020); *In re Rickerson*, 636 B.R. 416, 422 (Bankr. W.D. Pa. 2021); see also *In re Phenomenon Mktg. & Ent., LLC*, No. 2:22-BK-10132-ER, 2022 WL 1262001, at *1 (Bankr. C.D. Cal. Apr. 28, 2022), *modified,* No. 2:22-BK-10132-ER, 2022 WL 3042141 (Bankr. C.D. Cal. Aug. 1, 2022).

10. Nor can Masahiko be found to be engaged in commercial or business activities because he is married to Yasuko, who is engaged in such activities, and thus is an "affiliate" of hers that can thereby utilize Subchapter V. The term "affiliate" is defined in Section 101(2) of the Bankruptcy Code, 11 U.S.C. § 101(2), to include certain entities with a specified business relationship with the debtor (Section 101(2)(A), (B), (D)) and, in Section 101(2)(C), a "person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor." While Masahiko might be considered an "insider" with respect to his wife's business, see 11 U.S.C. § 101(31)(A)(i), which defines "insider" to include a relative of the debtor, he cannot be considered an "affiliate" of Yasuko since he cannot meet any of the criteria for such affiliate status.

5

See *In re Johnson*, 2021 WL 826156 at *9 (Bankr. N.D. Tex. March 1, 2021)(bankruptcy court rejected claim that spouse was an "affiliate" of the debtor and could avail herself of Subchapter V, since she did not meet any of the criteria set forth in Section 101(2).).

11.     Moreover, the fact that Masahiko may, at some time in the past, have been "engaged in commercial or business activities" that would have at that time qualified him to be considered a "small business debtor" does not allow him to assert that he is currently a "small business debtor" who can avail himself of Subchapter V. See *RS Air, supra* at 410 ("We agree with the majority, that the term 'engaged in' is inherently contemporary in focus and not retrospective. Thus, a debtor need not be maintaining its core or historical operations on the petition date, but it must be 'presently' engaged in some type of commercial or business activities to satisfy § 1182(1)(A).").

12.     Accordingly, this Court should issue an Order that Masahiko is not a "small business debtor" and thus cannot proceed under Subchapter V.

**THE COURT SHOULD DENY MASAHIKO AND YASUKO THE RIGHT TO SUBSTANTIVELY CONSOLIDATE THEIR BANKRUPTCY ESTATES AND SHOULD DISAGGREGATE THE ESTATES OF YASUKO AND MASAHIKO AND ORDER THAT THE ASSETS AND LIABILITIES OF EACH ESTATE SHALL BE DETERMINED SEPARATELY**

13.     Masahiko and Yasuko have filed a joint petition for bankruptcy under Subchapter V of Chapter 11. As discussed above, Masahiko is ineligible for Subchapter V and thus his assets and liabilities must be considered separately from Yasuko's assets and liabilities that are eligible for Subchapter V protection.

14.     Additionally, the estates of Yasuko and Masahiko must not be substantively consolidated and should be administered separately because each debtor's assets and liabilities are separate except for the liability they owe to Judgment Creditors and, more significantly, because a substantive consolidation of their estates shall result in significant harm and injustice to Judgment

6

Creditors who have suffered at the hands of Yasuko if Yasuko's assets can be dedicated toward the payment of Masahiko's massive tax and student loan liabilities that are unconnected in any manner to Yasuko's activities.

15.  Judgment Creditors are 12 wait staff who worked in two restaurants in New York City. Their claims against Yasuko and Masahiko in this proceeding arise from a Judgment entered against them by the United States District Court, Southern District of New York (the "District Court") on August 10, 2022 in *Keawsri et al. v. Ramen-Ya Inc. et al.*, 17-cv-02406 (the "District Court Action"). The Judgment, for which Yasuko and Masahiko are jointly and severally liable in addition to other judgment debtors in that action, is for $1,798,663.33 (plus post-judgment interest) for which Yasuko and Masahiko are jointly and severally liable. This amount is the liability set forth by Debtors in Schedule E/F(notwithstanding that they state in Schedule E/F that this amount is owed only to the named plaintiff in the caption of the District Court Action, this amount is due and owing *en toto* to Judgment Creditors, based on the amount of damages and penalties to be paid to each plaintiff and for the payment of attorney's fees and costs in the amount determined by the District Court.)

16.  The District Court made specific factual findings that Yasuko and Masahiko were "employers" within the meaning of the Fair Labor Standards Act ("FLSA") and New York law; that the 12 Judgment Creditors were not paid any wages or overtime, that unlawful deductions were made from their tips, that they were not provided "spread of hours" payments as required by New York law, and that they were not given complete and proper pay statements as required by New York law; and that they were entitled to an award of damages and penalties (including liquidated damages) and their attorney's fees and costs.

17.  Masahiko's status as an "employer" and consequent liability was determined by the

7

District Court in granting summary judgment to Judgment Creditors on August 10, 2021. The District Court conducted a trial as to Yasuko's status as an "employer" in July 2022 and, on July 11, 2022, the District Court issued an oral bench decision holding that based on her activities in management of the two restaurants and their employees, Yasuko was also an "employer."

18. All of the significant assets listed in the Schedule (in Schedule A/B) are owned by Yasuko, including their residence (which was re-deeded to Yasuko in 2002); the real property owned in Japan, which is owned by Yasuko jointly with her family members; the bank accounts (including accounts with Japanese banks), except for one "joint account"; the ownership of Kuraku; the ownership of Yokoyama Plastics jointly with her family members; and the loan by Yasuko to her niece. Masahiko has no interest in or connection with any of the Japanese assets listed in Schedule A/B. Masahiko identifies his assets as two Mercedes vehicles, with an estimated value of approximately $20,400.

19. The Schedule (in Schedule D and E/F) states that the overwhelming percentage of the debt belongs to Masahiko. Other than the amounts owed to Judgment Creditors, Yasuko's debts are listed as a mortgage and a second mortgage totaling approximately $275,000 on the residence owned by her (although the Schedule seemingly erroneously states that the second mortgage is a debt of both Masahiko and Yasuko); $17,300 on an auto loan; and $27,000 owed to the Internal Revenue Service.

20. Masahiko lists, in addition to the amounts owed to Judgment Creditors, $1.4 million owed to the New York State Department of Taxation and Finance; $14,195 owed to Bank of America; $474,000 to the Department of Education/Advantage for student loans (which were not for his education, but for his children).

21. Thus, it is evident that the consolidation of the assets and liabilities of Yasuko (who

8

is eligible for treatment of her estate under Subchapter V) and Masahiko (who is not) is inequitable to Judgment Creditors and other creditors. Masahiko incurred millions of dollars of debt (even before the Judgment issued by the District Court) and Yasuko held and holds millions of dollars of assets. For decades, they structured their activities in this manner, and now that Yasuko has been found liable to Judgment Creditors, she and her husband seek to evade liability to Judgment Creditors by commingling their estates. The Court should not countenance this artifice and should order that the debtors' estates shall not be substantively comingled but shall be considered and, as appropriate, administered separately.

22. Further, insofar as fees and costs may be incurred in the administration of this proceeding, they should be allocated between the estates of Yasuko and Masahiko so that the appropriate amount of funds are made available for Judgment Creditors and other creditors.

23. Moreover, it is the intent of Judgment Creditors to move to set aside Masahiko's assertion that the student loan liabilities identified in Schedule E/F are his debts since he only incurred those to pay for his adult daughters' education which under the applicable laws is a fraudulent transfer and can be set aside. His daughters who benefited from the loans can repay the loans. In addition, Judgment Creditors believe, based on investigation to date, that Yasuko transferred substantial sums to her adult daughters which Judgment Creditors shall move in due course to recover.

24. Section 302 of the Bankruptcy Code, 11 U.S.C. § 302, provides the means for procedural consolidation but not substantive consolidation. This provision states: "*After the commencement of a joint case*, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated." As stated in *In re McCulley*, 150 B.R. 358, 360 (Bankr. M.D. Pa. 1993): "The statute makes it clear that the estates are not consolidated unless the Court so

9

determines, 11 U.S.C. § 302(b). Absent a Court Order to consolidate, joint administration has absolutely no impact on the legal rights and obligations of the Debtor, Creditors, or the Trustee."

25. The Third Circuit has adopted an open-ended equitable inquiry and a set of questions to be applied to determine whether substantial consolidation is warranted. In *In re Owens Corning*, 419 F.3d 195, 210–11 (3d Cir. 2005), *as amended* (Aug. 23, 2005), *as amended* (Sept. 2, 2005), *as further amended* (Oct. 12, 2005), *as further amended* (Nov. 1, 2007), a case involving corporations, the Court held that substantive consolidation that results in unequitable results is not acceptable:

> [W]e "adopt[ed] an intentionally open-ended, equitable inquiry ... to determine when substantively to consolidate two entities." *Id.* at 87. While we mentioned that "in the bankruptcy context the inquiry focuses primarily on financial entanglement," *id.,* this comment primarily related to the hopeless commingling test of substantive consolidation. But when creditors deal with entities as an indivisible, single party, "the line between operational and financial [factors] may be blurred." *Id.* at 88. We reiterate that belief here. Too often the factors in a checklist fail to separate the unimportant from the important, or even to set out a standard to make the attempt. *Accord* Br. of Law Professors[17] as *Amici Curiae* at 11–12. This often results in rote following of a form containing factors where courts tally up and spit out a score without an eye on the principles that give the rationale for substantive consolidation (and why, as a result, it should so seldom be in play). *Id.* ("Differing tests with a myriad of factors run the risk that courts will miss the forest for the trees. Running down factors as a check list can lead a court to lose sight of why we have substantive consolidation in the first instance ... and often [to] fail [to] identify a metric by which [it] can ... [assess] the relative importance among the factors. The ... [result is] resort to ad hoc balancing without a steady eye on the ... [principles] to be advanced....").
>
> What, then, are those principles? We perceive them to be as follows.
>
> (1) Limiting the cross-creep of liability by respecting entity separateness is a "fundamental ground rule[ ].
>
> (2) The harms substantive consolidation addresses are nearly always those caused by debtors (and entities they control) who disregard separateness.18 Harms caused by creditors typically are remedied by provisions found in the Bankruptcy Code (e.g., fraudulent transfers, §§ 548 and 544(b)(1), and equitable subordination, § 510(c))." ...

10

> (3) Mere benefit to the administration of the case (for example, allowing a court to simplify a case by avoiding other issues or to make postpetition accounting more convenient) is hardly a harm calling substantive consolidation into play.
>
> (4) Indeed, because substantive consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and imprecise, this "rough justice" remedy should be rare and, in any event, one of last resort after considering and rejecting other remedies (for example, the possibility of more precise remedies conferred by the Bankruptcy Code).
>
> (5) While substantive consolidation may be used defensively to remedy the identifiable harms caused by entangled affairs, it may not be used offensively (for example, having a primary purpose to disadvantage tactically a group of creditors in the plan process or to alter creditor rights).
>
> The upshot is this. In our Court what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.

(emphasis added)(footnotes deleted). *In re HH Liquidation, LLC.*, 590 B.R. 211, 257-258 (Bankr. D.Del. 2018), the court applied *Owens-Corning* and denied substantive consolidation of separate corporate estates of different corporations since it was not shown that "the Debtors and the PropCo Entities disregarded their corporate separateness 'so significantly' that 'their creditors relied on the breakdown of entity borders and treated them as one legal entity.'" Here, the debts identified as emanating from Masahiko are clearly distinguished from those of Yasuko, and no creditor could have reasonably concluded that the debts of one were in any manner the debts of the other. And, allowing substantive consolidation would work a severe injustice to Judgment Creditors. Consequently, the principle enunciated by the Third Circuit in *Owens-Corning* and the Delaware bankruptcy court in *HH Liquidation* apply with equal force here.

26. In the situation of spouses who file jointly for bankruptcy protection, the Eleventh Circuit has reached a similar decision. In *In re Reider*, 31 F.3d 1102, 1109 (11th Cir. 1994), the

11

court analyzed the factors to be considered when determining whether a joint filing of a husband and wife warrants substantive consolidation, it held that:

> Substantive consolidation should be invoked "sparingly" where any creditor or debtor objects to its use. *See Chemical Bank New York Trust Co. v. Kheel,* 369 F.2d 845, 847 (2d Cir.1966).
>
> The filing of a joint petition by a husband and wife does not result in the automatic substantive consolidation of the two debtors' estates. *In re Ageton,* 14 B.R. 833, 835 (9th Cir. BAP 1981); *In re Chandler,* 148 B.R. 13, 15 (Bankr.E.D.N.C.1992); *In re Masterson,* 55 B.R. 648, 649 (Bankr.W.D.Pa.1985). Joint administration is designed for the ease of administration and to permit the payment of only one filing fee. *In re Crowell,* 53 B.R. 555, 557 (Bankr.M.D.Tenn.1985); *In re Stuart,* 31 B.R. 18 (Bankr.D.Conn.1983). Joint administration is thus a procedural tool permitting use of a single docket for administrative matters, including the listing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of other ministerial matters that may aid in expediting the cases. Rule 1015, Advisory Committee Note (1983). Used as a matter of convenience and cost saving, it does not create substantive rights. *Unsecured Creditors Committee v. Leavitt Structural Tubing Co.,* 55 B.R. 710, 712 (D.N.D.Ill.E.D.1985). By contrast, substantive consolidation "is no mere instrument of procedural convenience ... but a measure vitally affecting substantial rights." *In re Flora Mir Candy Corp.,* 432 F.2d 1060, 1062 (2d Cir.1970). Thus, conduct by the debtor spouses in jointly administering their estates should be accorded relatively little weight in assessing the propriety of substantive consolidation.

27.     *In re Reider, id.* at 1108-1109 articulated the following test for assessing whether it is proper to substantively consolidate the bankruptcy filings of spouses:

> In assessing the propriety of substantive consolidation, a court must determine: (1) whether there is a substantial identity between the assets, liabilities, and handling of financial affairs between the debtor spouses; and (2) whether harm will result from permitting or denying consolidation. In assessing the extent of substantial identity, relevant factors will include the extent of jointly held property and the amount of joint-owed debts. H.R. No. 95–595, 95th Cong., 1st Sess. 321 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 32 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5818, 5963, 6277. Upon a determination of substantial identity, the court must then analyze the harm attendant to a failure to consolidate. Where administrative difficulties in disentangling the spouses' estates makes it prohibitively expensive or where disentanglement is otherwise impracticable, consolidation should ordinarily be permitted. A creditor may also demonstrate that it will be unfairly prejudiced by a failure to consolidate and may interpose the fraud or bad faith of the debtors as a defense. To prevent

consolidation, a creditor may demonstrate that it has relied on the separate credit and assets of one of the spouses and would be harmed by a consolidation of assets. The burden is upon the proponent of a motion for consolidation and is exacting. *See Knobel, supra,* 167 B.R. at 441 n. 10. Ultimately, the court must be persuaded that "'the creditors will suffer greater prejudice in the absence of consolidation than the debtors (and any objecting creditors) will suffer from its imposition.'" *Steury, supra,* 94 B.R. at 554–55 (quoting *Holywell Corp. v. Bank of New York,* 59 B.R. 340, 347 (D.S.D.Fla.1986))

(footnote deleted) The court held that because the assets and liabilities of each spouse were sufficiently identifiable, substantive consolidation was not warranted.

28. Yasuko's assets are identifiable and are her separate property. She owns (or claims to own) Kuraku, she owns the New Jersey property separately, and her Japanese assets she inherited from her parents. At the 341 creditors' meeting, and in the CPLR 6219 Garnishee's Statement dated August 29, 2022 served by Masahiko as ordered by the District Court, Masahiko testified that he alone, and not Yasuko, has the liabilities owed to the New York State Department of Taxation and Finance and for student loans, which are identified in the Schedule E/F as his debts. In her CPLR 6219 Garnishee's Statement and in Schedule E/F, Yasuko does not claim to owe these debts. [Exhibit 4 annexed to FR Decl.] And, as described above, Yasuko has millions of dollars of assets, including assets in Japan that are connected to her family and for which Masahiko does not have any ownership interest or connection.

29. Additionally, as stated above, Judgment Creditors will be significantly harmed if Yasuko and Masahiko's estates are consolidated substantially. By subterfuge and design, Yasuko attempts to wall off her assets, including Kuraku (which is a continuance and *alter ego* of the restaurant business that she owned and from which Judgment Creditors' claims emanate), by seeking to have all of Masahiko's debts applied against those assets so that she can escape paying to Judgment Creditors what they should receive for her violations of federal and New York wage

payment laws. The Court should not countenance such subterfuge.

30. Consequently, the Court should order that the claims of Yasuko and Masahiko in this bankruptcy proceeding be disaggregated, and that each Debtor's claims be substantively considered based on their individual assets and liabilities.

**THE COURT SHOULD REJECT THE EXEMPTION SOUGHT BY DEBTORS FOR THEIR RETIREMENT ACCOUNTS, SINCE THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK PREVIOUSLY HELD THAT SUCH EXEMPTIONS MAY NOT BE INVOKED BY DEBTORS, AND THIS DETERMINATION HAS RES JUDICATA EFFECT IN THE BANKRUPTCY PROCEEDING**

31. As described above, on August 10, 2022, the District Court entered a Judgment against Debtors (and other defendants in that action) in the amount of $ 1,798,633.63, for which Debtors are jointly and severally liable, along with post-judgment interest.

32. After Judgment was entered, Judgment Creditors commenced to execute the judgment. They identified, through extensive efforts and despite resistance by Debtors, the other judgment debtors in that action, and their attorneys, assets held in the name of Debtors and other judgment debtors, and sought, in accordance with Fed.R.Civ.P. 69 and New York law (C.P.L.R. Article 52), to recover amounts due and owing to them pursuant to the Judgment.

33. Among the assets identified during this search were certain individual retirement accounts and self employed retirement accounts (jointly referenced as "IRA Accounts") established by Debtors with Merrill Lynch, Pierce, Fenner & Smith ("Merrill"). Judgment Creditors moved before the District Court for an order, *inter alia*, directing Debtors to turn over to Judgment Creditors the funds in three Merrill accounts. Debtors had full opportunity to come forth with facts demonstrating that inasmuch as the three Merrill accounts were IRA Accounts, turnover of the funds in those accounts are exempted by applicable law, but they failed to do so. On December 19, 2020, the District Court held that the exemption for such accounts does not apply

14

and that "Judgment Debtors are required to, and will be ordered to, turn over the funds in these accounts." [Exhibit 5 annexed to FR Decl.] Debtors moved for reconsideration of the District Court's order, which the District Court denied on January 24, 2023. [Exhibit 5 annexed to FR Decl.]

34. Notwithstanding the express determination in the District Court Action that Yasuko and Masahiko are not entitled to any exemption for any portion of the funds in the IRA Accounts, they have included these accounts in their listing in Schedule C of assets they claim to be exempt.

35. The District Court decisions denying exemption for turnover of the Merrill accounts are *res judicata* with respect to this matter and Debtors are barred from challenging those decisions in this proceeding. Debtors were represented by counsel throughout the District Court proceeding, and they had full opportunity to raise their position that the exemption for turnover of retirement account funds applies to the Merrill accounts, including at a hearing before the District Court where they had opportunity to present evidence on this matter. They did not do so, and the District Court rejected their claim for an exemption—and found unavailing their motion for reconsideration of its decision. Debtors did not appeal the District Court's order, and thus the determination by the District Court that no exemption for the funds in the Merrill accounts is final and is "the law of the case." is respectfully submitted that this Court must respect and give full credit to the District Court's decision.

36. The legal doctrine of *res judicata* applies in bankruptcy proceedings. "Res judicata, or claim preclusion applies to claims that were or could have been raised in a prior action involving the parties or their privies when the prior action had been resolved by a final judgment on the merits. *In re Graham,* 973 F.2d 1089, 1093 (3d Cir.1992) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)); *see also Lubrizol Corp. v. Exxon Corp.,* 929 F.2d

15

960, 963 (3d Cir.1991) (Federal law of claim preclusion requires a defendant to demonstrate that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.). Claim preclusion thus bars relitigation of any claim that could have been raised in the prior action even if it was not so raised." *In re Graham,* 973 F.2d at 1093. *In re Romano*, 378 B.R. 454, 463 (Bankr. E.D. Pa. 2007). See also *In re Daniels*, 270 B.R. 417, 424 (Bankr. E.D. Mich. 2001).

37. Thus, since the issue of whether an exemption applies to the IRA Accounts was fully litigated in the District Court Action and the District Court definitively determined that no such exemption can be applied to the IRA Accounts, this Court is precluded from applying any exemption to these accounts.

38. Judgment Creditor shall move the Court for a determination that the IRA Accounts are not part of the bankruptcy estate of Yasuko and Negita, and that Debtors should be directed—in compliance with the order of the District Court dated December 19, 2022—to turn over these funds to Judgment Creditors. To fail to do so would sanction their defiance of the orders of the District Court and would make a mockery of the judicial process.

## CONCLUSION

39. For the foregoing reasons, and in full consideration of the filings in this matter and the annexed exhibits, this Court should grant Judgment Creditors' motion in its entirety.

Dated: May 25, 2023

Respectfully submitted,

*/s/ Jeffrey M. Traurig*
Jeffrey M. Traurig, Esq.
**TRAURIG LAW LLC**
One University Plaza, Suite 124
Hackensack, NJ 07601
jtraurig@trauriglaw.com

*Co-counsel to the Judgment Creditors*

**FLORENCE ROSTAMI LAW LLC**
Florence Rostami (*admitted pro hac vice*)
Neal Haber (*admitted pro hac vice*)
420 Lexington Avenue, Suite 1402
New York, NY 10170
frostami@rostamilaw.com
nhaber@rostamilaw.com

*Lead counsel to the Judgment Creditors*

17