**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
(973) 597-9100
Barry J. Roy
Jeffrey A. Cooper
*Counsel to Debtors/Debtors-In-Possession*

In re:

MASAHIKO NEGITA and YASUKO NEGITA,

Debtors.

Chapter 11
*(Subchapter V)*

Case No. 23-12365

Honorable Stacey L. Meisel

## PLAN OF REORGANIZATION FOR YASUKO NEGITA

This Plan of Reorganization for Yasuko Negita (the "Plan") [1] is presented to you to inform you of the proposed Plan for restructuring the debts of Yasuko Negita and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document in Articles 8 and 10.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY NO LATER THAN SEVEN DAYS PRIOR TO THE CONFIRMATION HEARING.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY SEVEN DAYS PRIOR TO THE CONFIRMATION HEARING. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: Rabinowitz, Lubetkin & Tully, LLC, 293 Eisenhower Parkway, Suite 100, Livingston, New Jersey 07039, Attn: Barry J. Roy, Esq.; broy@rltlawfirm.com.**

---

[1] The Debtors' Plan of Reorganization (the "Initial Plan") [Docket No. 108], dated July 21, 2023 filed by Masahiko Negita ("Masahiko") and Yasuko Negita (Yasuko, and together with Masahiko, the "Debtors") is superseded by the Plan with respect to Yasuko. The Debtors are not seeking confirmation of a chapter 11 plan with respect to Masahiko and will instead, by separate motion, seek the dismissal of Masahiko's Subchapter V bankruptcy case.

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR OCTOBER 24, 2023 at 11:00 A.M. IN COURTROOM 3A AT THE MARTIN LUTHER KING, JR. COURTHOUSE, 50 WALNUT STREET, NEWARK, NEW JERSEY 07102.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Date: September 26, 2023

Barry J. Roy, Esq.
Rabinowitz, Lubetkin & Tully, LLC
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
broy@rltlawfirm.com

Date: September 26, 2023

Masahiko Negita

Date: September 26, 2023

Yasuko Negita

ii

## TABLE OF CONTENTS

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS** ............................ 1

**Article 1**
**HISTORY OF THE DEBTORS** ................................................................................... 3

1.1 Nature of the Debtors' Financial Affairs ................................................................ 3

1.2 Filing of the Debtors' Chapter 11 Case .................................................................. 3

1.3 Debtors' Assets ...................................................................................................... 3

1.4 Debtors' Liabilities ................................................................................................ 4

1.5 Current and Historical Financial Conditions .......................................................... 5

1.6 Significant Events During the Bankruptcy Case ..................................................... 5

1.7 Projected Recovery of Avoidable Transfers ........................................................... 6

**Article 2**
**THE PLAN** .............................................................................................................. 7

2.1 Unclassified Claims ............................................................................................... 7

    A. Administrative Expenses .................................................................................... 7
    B. Priority Tax Claims ............................................................................................ 9
    C. Classes of Priority Unsecured Creditors ............................................................ 9

2.2 Classes of Claims and Equity Interests .................................................................. 9

    A. Classes of Secured Claims ................................................................................. 9
    B. Class of General Unsecured Claims .................................................................. 10
    C. Class of Equity Interest Holders ...................................................................... 11

2.3 Estimated Number and Amount of Claims Objections ........................................... 11

2.4 Treatment of Executory Contracts and Unexpired Leases ...................................... 12

2.5 Means for Implementation of the Plan ................................................................... 12

2.6 Payments .............................................................................................................. 12

2.7 Post-Confirmation Management ............................................................................. 13

2.8 Tax Consequences of the Plan ............................................................................... 13

**Article 3**
**FEASIBILITY OF THE PLAN** .................................................................................. 13

3.1 Ability to Initially Fund Plan ................................................................................ 13

3.2 Ability to Make Future Payments and Operate Without Further Reorganization .................. 13

**Article 4**
**LIQUIDATION ANALYSIS** ....................................................................................... 14

iii

**Article 5**
**DISCHARGE** ............................................................................................................. 14

**Article 6**
**GENERAL PROVISIONS** ....................................................................................... 14

6.1 Title of Assets ..................................................................................................... 14

6.2 Binding Effect ..................................................................................................... 15

6.3 Severability ......................................................................................................... 15

6.4 Retention of Jurisdiction by the Bankruptcy Court .......................................... 15

6.5 Captions ............................................................................................................... 15

6.6 Modification of the Plan ..................................................................................... 15

6.7 Final Decree ........................................................................................................ 16

**Article 7**
**ATTACHMENTS** .................................................................................................... 16

**Article 8**
**FREQUENTLY ASKED QUESTIONS** .................................................................. 16

**Article 9**
**DEFAULT PROVISIONS AND REMEDIES** ........................................................ 17

**Article 10**
**DEFINITIONS** ........................................................................................................ 18

**Article 11**
**TREATMENT OF UNSECURED CREDITORS, INCLUDING, CLAIMS HELD BY**
**JUDGMENT CREDITORS AND THE SDNY CHAPTER 7 TRUSTEE FOR MAKI AND**
**RAMEN-YA INC.** ..................................................................................................... 21

iv

## **SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

Yasuko is seeking to reorganize in an effort to restructure her financial affairs and achieve financial stability.

The terms of this Plan are the culmination of extended litigation, negotiations and discussions by and between Yasuko, the Judgment Creditors, the Subchapter V Trustee, and the SDNY Chapter 7 Trustee, among others, resulting in an agreement for a total of $1,725,000 to be paid, on the Effective Date, as part of a global settlement with the Judgment Creditors, Subchapter V Trustee, SDNY Chapter 7 Trustee, and other creditors of Yasuko and related parties Ramen-Ya. Inc. ("RYI") and Miho Maki ("Maki"). To ensure the feasibility of the Plan, Yasuko's bankruptcy counsel has been receiving deposits into its client trust fund account and shall be required to be holding the full $1,725,000 in its account no later than October 10, 2023, so that distributions can be made on or before the Effective Date.

The Plan provides for payment of all of Yasuko's unsecured creditors in an agreed upon amount on the Effective Date, with the only remaining unpaid creditors to be her retained professionals. The source of the funds to satisfy the obligations under the Plan are from (a) the liquidation of Yasuko's exempt and non-exempt assets; (b) her earned income; and (c) loans or gifts.

HSBC Bank USA National Association as Trustee Deutsche ALT-A Securities Inc. Mortgage Loan Trust Series 2005-2 Mortgage Pass-Through Certificates ("HSBC") in its capacity as a first mortgagee on the residence owned by Yasuko located at 8 Floral Terrace, Tenafly, New Jersey 07670 (the "Residence"), shall have its Allowed Secured Claim satisfied in full upon the closing of the sale of the Residence, pursuant to the Sale Order, which closing shall have occurred no later than October 10, 2023.

Similarly, JP Morgan Chase Bank, NA in its capacity as second mortgagee on the Residence shall have its Allowed Secured Claim satisfied in full upon the closing of the sale of the Residence, pursuant to the Sale Order, which closing shall have occurred no later than October 10, 2023.

Chase Auto Finance shall also continue to receive regular monthly payments on account of its Allowed Secured Claim encumbering a 2021 Lexus RX350 motor vehicle owned by Yasuko, until such time as Chase Auto Finance's Allowed Secured Claim is satisfied in full.

The Allowed Priority Tax Claims of the IRS and State of New Jersey owed by Yasuko shall receive equal quarterly installments, plus interest at the statutory rate, in the amounts necessary to satisfy the IRS and State of New Jersey's Allowed Priority Claim in full within five (5) years of the Petition Date.

Based on his inability to satisfy the alleged Priority Claim due and owing to the New York State Division of Taxation and Finance at this juncture, Masahiko acknowledges that he cannot achieve Confirmation of a plan of reorganization. As such, Masahiko will seek the dismissal of his Subchapter V Chapter 11 case. Accordingly, only creditors of Yasuko are entitled to vote on the Plan.

1

General Unsecured Creditors of Yasuko will be paid agreed upon amounts on the Effective Date, which Yasuko asserts exceed her disposable income over a period of three years and is more than said creditors would receive in a Chapter 7 liquidation.

# ARTICLE 1

## HISTORY OF THE DEBTORS' FINANCIAL AFFAIRS[2]

### 1.1     Nature of the Debtors' Financial Affairs.

The Debtors have historically been involved in the ownership and operation of Japanese style restaurants in New York. The Debtors' financial difficulties arise out of two unrelated circumstances. Firstly, Masahiko was the owner and operator of a restaurant known as Fukumatsu in New York City. Upon deciding to cease operations, Masahiko transferred the business operations to an associate, who unbeknownst to Masahiko, continued operations wrongfully utilizing the same tax ID number that was attributable to Fukumatsu. That new operator paid no sales taxes whatsoever, ultimately resulting in the assessment of a New York State Division of Taxation and Finance sales tax liability against Masahiko personally, of in excess of $1,400,000. As stated previously, given his inability to satisfy the alleged Priority Claim of the New York State Taxing Authority in accordance with the provisions of the Bankruptcy Code at this juncture, Masahiko will seek dismissal of his Subchapter V Chapter 11 case.

On August 10, 2022, the United States District Court for the Southern District of New York (the "SDNY Court") issued an Opinion and Order in which it determined that Masahiko, in connection with his involvement with two New York City restaurants, RYI and Y&S International Corp., had violated certain provisions of the Fair Labor Standards Act and New York Labor Law. Thereafter, on July 11, 2022, after a trial on the issue of Yasuko's "employer" status, the SDNY Court rendered an oral decision ruling that she was an "employer" of the plaintiffs and was also jointly and severally liable to the plaintiffs. The judgment arising out of that litigation exceeds $1,800,000.

In order to address Debtor Masahiko's New York State tax liability and the couple's judgment liability arising out of their involvement with RYI and Y&S International Corp., the Debtors commenced the within Subchapter V, Chapter 11 bankruptcy proceeding.

### 1.2     Filing of the Debtors' Subchapter V Chapter 11 Case.

On March 23, 2023, the Debtors filed a Voluntary Petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Newark, New Jersey.

### 1.3     Debtors' Assets.

Masahiko's assets consist of (i) a Mercedes Benz S55 motor vehicle; (ii) a Mercedes Benz 280SE motor vehicle; (iii) furniture, fixtures, home electronics and wearing apparel, which are all exempt pursuant to the provisions of the Bankruptcy Code; (iv) cash as of the filing date of approximately $28,000; (v) a SEP IRA with Merrill Lynch (which is the subject of a motion to

---

[2] Although the Plan is only proposed for Yasuko, the Debtors are providing background information in the Plan regarding Masahiko to provide creditors and the Bankruptcy Court a more complete picture of the Debtors' Subchapter V Chapter 11 Case.

determine its exempt status now returnable on October 24, 2023); (vi) a whole life insurance policy with Hartford Life Insurance.). The aggregate non-exempt value of Masahiko's assets is approximately $53,000. It is submitted that in liquidation, all of such value would be exhausted by administrative expenses, including Chapter 7 and already incurred Chapter 11 administrative fees, such that Masahiko's Creditors would receive nothing in a Chapter 7 liquidation. For that reason, among others, Masahiko will seek the dismissal of his Subchapter V Chapter 11 case and the Plan is proposed only for Yasuko

As of the Petition Date, Yasuko has a more involved asset picture, including (i) ownership of a principal residence located at 8 Floral Terrace, Tenafly, New Jersey; (ii) minority ownership of four parcels of real property located in Tokyo, Japan; (iii) minority ownership of Yokoyama Plastics ("Yokoyama"), a small manufacturing business in Japan that employs five individuals and generates approximately $400,000 in annual revenues, including, upon information and belief, ownership of a small portion of the building owned by Yokoyama, and ownership of 50% of three parcels of land and 25% of a smaller parcel on which the building is located; (iv) ownership of a Lexus RX350 motor vehicle; (v) furniture, fixtures, home electronics and wearing apparel, which are all exempt pursuant to the provisions of the Bankruptcy Code; (vi) limited amounts of jewelry; (vii) cash of approximately $50,000; (viii) a loan receivable due from a family member in Japan; (ix) a whole life insurance policy with New York Life;(x) an IRA (which is the subject of a motion to determine its exempt status now returnable October 24, 2023); and (xi) a deposit for the purchase of a Porsche motor vehicle. The aggregate non-exempt value of Yasuko's assets is approximately $1,200,000, and this amount will be dedicated to Yasuko's Creditors under the Plan in accordance with the Bankruptcy Code priorities.

Yasuko also scheduled an equity interest in Ku-Raku New York, Inc. ("Kuraku NYC"). Kuraku NYC is the subject of litigation in an action entitled *Ornrat Keawsri et. al. v. Ramen-Ya, Inc. et. al.*, Index No. 17-CV-2406 currently pending before Hon. Judge Liman of the SDNY Court (the "District Court Action"). On September 13, 2023, Judge Liman issued an Opinion and Order deeming Kuraku NYC an alter ego of RYI. [SDNY Court ECF Dkt. No. 740] Currently pending in the District Court Action is a motion to appoint a receiver for Kuraku NYC.

### 1.4    Debtors' Liabilities.

As indicated, the primary liabilities of Masahiko are his priority tax claim due and owing to the New York State, Department of Taxation and Finance that is disputed in the amount of approximately $1,400,000, and General Unsecured Claims of approximately $2,500,000. As stated previously, given his inability to satisfy the alleged Priority Claim of the New York State Taxing Authority in accordance with the provisions of the Bankruptcy Code at this juncture, Masahiko will seek dismissal of his Subchapter V Chapter 11 case.

As of the Petition Date, Yasuko's liabilities consist of (i) the first priority secured claim of HSBC constituting a first priority mortgage on her Residence; (ii) the second priority mortgage lien of Chase Bank on the Residence; (iii) the Allowed Priority Tax Claim due to the IRS and the State of New Jersey of approximately $32,245; (iv) lease guaranty claim of $129,179.08; (v) the judgment liability arising out of her involvement with, among others, RYI and Y&S International Corp. in excess of $1,800,000; and (vi) claims of the SDNY Chapter 7 Trustee relating to Yasuko's

ownership interest in KuRaku NYC and potential contribution claims against her as a co-judgment debtor.

**1.5      Current and Historical Financial Conditions.**

Annexed hereto as Exhibit "A" is a copy of Yasuko's projection of cash on hand as of the anticipated Confirmation hearing.  In addition, annexed hereto as Exhibit "B" is a copy of Yasuko's projected income and expenses for the three-year period commencing on Confirmation. Attached hereto as Exhibit "C" is a liquidation analysis of the Debtors' assets

**1.6      Significant Events During the Bankruptcy Case.**

Among the significant events that occurred or will occur during the Chapter 11 case include the following:

1.    The Debtors commenced their bankruptcy proceeding on March 23, 2023 as the result of the filing of a Voluntary Petition pursuant to the provisions of Subchapter V of Chapter 11 of the United States Bankruptcy Code.

2.    The Debtors filed retention pleadings for Sean Raquet, CPA, LLC as accountant.

3.    The Debtors filed retention pleadings for Rabinowitz, Lubetkin & Tully, LLC as their bankruptcy counsel.

4.    The United States Trustee for the District of New Jersey appointed Nancy Isaacson, Esq. as the Subchapter V Trustee respecting the Debtors' bankruptcy proceeding.

5.    On April 26, 2023, the staff attorney for the United States Trustee for the District of New Jersey conducted the 341(a) meeting of creditors of the Debtors' bankruptcy proceeding.

6.    On May 2, 2023, the Debtors sought the retention of Coldwell Banker as realtor in order to market the Residence owned by Yasuko Negita.

7.    On May 5, 2023, the Bankruptcy Court entered an Order granting the Debtors' application to retain Sean Raquet, CPA, LLC as their accountant.

8.    On May 5, 2023, the Bankruptcy Court entered an Order granting the Debtors' application to retain Rabinowitz, Lubetkin & Tully, LLC as their bankruptcy counsel.

9.    On May 12, 2023, the Bankruptcy Court entered an Order granting the Debtors' application to retain Coldwell Banker as their realtor.

10.   On May 16, 2023, the Debtors filed their Status Report.

11.   On May 24, 2023, the Court entered a Consent Order resolving a motion for relief from the automatic stay filed on behalf of a personal injury claimant Jimmy Rivas,

who agreed to limit his recoveries to available insurance proceeds, if any, and to waive any direct claims against the bankruptcy estates.

12.    On May 25, 2023, the employee claimants who have a judgment against the Debtors filed a motion in the Bankruptcy Court seeking various forms of relief, including a prohibition on the substantive consolidation of the Debtors' bankruptcy estates, an objection to the Debtors' claims of exemptions respecting their IRA's, and for other related relief. The Debtors have opposed that motion. The motion has been adjourned and the relief sought in the Motion will be moot because of the Plan.

13.    On May 30, 2023, the Court conducted the initial status conference in the within matter.

14.    On July 18, 2023, the Court conducted the second status conference in the within matter.

15.    On July 21, 2023, the Debtors filed the Initial Plan. [Dkt.t No. 108].

16.    On August 30, 2023, the Bankruptcy Court entered an order authorizing the Debtors to retain Tenmabashi Appraisal Co. as an appraiser to value Yasuko's Japanese assets.

17.    On September 12, 2023, the Bankruptcy Court entered an order authorizing Yasuko to sell her real property located at 8 Floral Terrace, Tenafly, New Jersey, free and clear of certain liens, claims and interests pursuant to 11 U.S.C. § 363(b), (f) and (m) to Jimmy Shak for $1,200,000.

18.    On September 12, 2023, the Bankruptcy Court conducted the third status conference in the within matter.

19.    On September 15, 2023, the Bankruptcy Court entered a Consent Order extended through November 17, 2023, the time through within which the Judgment Creditors may file and serve a complaint objecting to the Debtors' discharge and/or determining the dischargeability of debts. [Docket No. 172]

20.    On September 28, 2023, Yasuko filed the Plan.

**1.7    Projected Recovery of Avoidable Transfers.**

Yasuko is aware of no pre-petition transactions that would result in the ability to pursue avoidance actions, whether consisting of avoidable preferences or fraudulent conveyances.

## ARTICLE 2

## THE PLAN

The Plan describes how Creditors will be paid. Certain Claims entitled to specific treatment under the Bankruptcy Code are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest is impaired if the Plan alters the legal, equitable, or contractual rights to which the Claimants in that class are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1    Unclassified Claims.

Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.  Administrative Expenses

Yasuko must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by Yasuko and the Administrative Claimant or included in a Court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.  Ordinary course expenses resulting from Yasuko's financial affairs following the bankruptcy filing are Administrative Expenses and entitled to be paid in full for the goods or services provided. This ordinary debt incurred by the Yasuko after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between Yasuko and her Creditors.

7

2. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the Allowed Claim of the Subchapter V Trustee for fees and/or reimbursements, and including fees and expenses for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtors during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists Yasuko's estimated Administrative Expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of affairs after the Petition Date | monthly bills approximate $5,500 | Will be paid on an ongoing basis in accordance with the ordinary business practices and terms between Yasuko and her Creditors. |
| Professional fees, as approved by the Bankruptcy Court due to Debtors' counsel Rabinowitz, Lubetkin & Tully, LLC | $115,000 estimated amount | After Bankruptcy Court approval, payment to the extent of the retainer, and if any debt remains thereafter, through the Plan as follows: as agreed upon over time from Yasuko's disposable income and dividends, if any, and secured by a lien on the assets and income stream of KuRaku NYC. |
| Professional fees, as approved by the Bankruptcy Court due to Debtors' accountant Sean Raquet, CPA, LLC | $15,000 estimated amount | After Bankruptcy Court approval, payment to the extent of the retainer, and if any debt remains thereafter, through the Plan as follows: as agreed upon over time from Yasuko's disposable income and dividends, if any, and secured by a lien on the assets and income stream of KuRaku NYC. |
| Clerk's Office Fees | Unknown | Paid in full on the Effective Date |
| Subchapter V Trustee fees | $15,000 estimated amount | After Bankruptcy Court approval, payment through the Plan as follows: upon the Effective Date. |

8

B.  Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.  The Priority Tax Claims include the IRS Claim and the State of New Jersey Claim against Yasuko for approximately $32,245.

C.  Classes of Priority Unsecured Claims

Certain Priority Claims that are referred to in Sections 507(a)(l), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

Yasuko has no creditors containing Claims under Sections 507(a)(l), (4), (5), (6), and (7) of the Code.

**2.2    Classes of Claims and Equity Interests.**

The following are the voting classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.      Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a General Unsecured Claim. In addition, certain claims secured only by the Debtors' principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtors' secured prepetition Claims and their proposed treatment under the Plan:

| Class# | Description | Insider? (Yes or No) | Impairment | Treatment |
|--------|-------------|----------------------|------------|-----------|
| 1 | Secured Claim of HSBC | No | Not Impaired | The Claim will be satisfied upon the closing of the sale of the Residence, which closing shall have occurred no later than October 10, 2023 |

9

| 2 | Secured Claim of JP Morgan Chase Bank, NA | No | Not Impaired | The Claim will be satisfied upon the closing of the sale of the Residence, which closing shall have occurred no later than October 10, 2023 |
| 3 | Secured Claim of Chase Auto Finance | No | Not Impaired | Continued monthly payments in accordance with the pre-petition loan agreement. |
| 4 | Judgment Creditors | No | Impaired/Disputed | As part of the global resolution described in Article 11 under the Plan, and as set forth below in 2.2 (B), payment on the Effective Date in the amount of $1,560,000. |

B.    Class of General Unsecured Claims

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  All Creditors not otherwise classified herein shall be deemed General Unsecured Claims.

| Class# | Description | Impairment | Treatment |
|---|---|---|---|
| 5 | General Unsecured Class | Impaired | The unsecured creditors will receive, on the Effective Date, an amount equal to the agreed amount of their claims.  As part of the global resolution described in Article 11 of this  Plan, on the Effective Date, (a) the Judgment Creditors shall be paid the amount of $1,560,000,  (b) the SDNY Chapter 7 Trustee shall be paid (i) the amount of $69,156.02 plus the amount of all claims filed to and through October 20, 2023 the claims bar date in the RYI and Maki bankruptcy cases, and (ii) the amount of $12,072.90 for payment of the claim filed by the Small Business Administration ("SBA") in the RYI bankruptcy case, and (c) 133 6th McDougal (the "Landlord"), the |

|  |  |  | former landlord for RYI on behalf of the tenant RYI and Yasuko, as alleged guarantor of that debt, shall be paid the amount of $30,000, subject to Yasuko's right to object to this claim or negotiate a reduction.[3] |
|---|---|---|---|

### C.    Class of Equity Interest Holders

Equity Interest holders are parties who hold an ownership interest (i.e., equity interest) in Yasuko. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of Equity Interest holders:

| Class# | Description | Impairment | Treatment |
|---|---|---|---|
| 6 | Yasuko Negita | Impaired | After payment of the $1,725,000 required to be paid to Judgment Debtors, Subchapter V Trustee, SDNY Chapter 7 Trustee, the Landlord, and other creditors, on the Effective Date, Yasuko shall retain her assets held on the Effective Date, including, but not limited to, her ownership interest in KuRaku NYC. |

### 2.3    **Estimated Number and Amount of Claims Objections.**

Yasuko may object to the amount or validity of any Claim within sixty (60) days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. When a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtors will pay the Allowed Claim in accordance with the Plan. Notwithstanding anything contained in this paragraph, upon the Confirmation Date and occurrence of the Effective Date, Yasuko shall waive any right to object to the Claims of the Judgment Creditors (in the amount of $1,560,000), the SDNY Chapter 7 Trustee (in the amount of $69,156.02) or the SBA (in the amount of $12,072.90).

---

[3] The Landlord filed this same claim in the RYI case. Accordingly, the SDNY Chapter 7 Trustee requires as a condition for his consent to this treatment and the settlement described in Article 11 of this Plan, that these Debtors satisfy this claim or pay the SDNY Chapter 7 Trustee to do so.

### 2.4    Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for Yasuko and another party to the contract. Yasuko has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.

Assumption means the Yasuko has elected to continue to perform the obligations under such contracts and unexpired leases and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

Yasuko does not intend to assume any executory contracts on Confirmation, other than the loan and corresponding lien encumbering her automobile.

If you object to the assumption of your unexpired lease or executory contract, the proposed amount of the cure obligations, if any, or the manner of their cure, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the Confirmation of the Plan, or any such obligation shall be deemed waived, barred, and discharged.

All Executory Contracts, other than those specified above, shall be deemed rejected on Confirmation.

Rejection means that the Yasuko has elected not to continue to perform the obligations under such contracts or leases. If Yasuko has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract is thirty days from entry of an Order confirming the Plan**. Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

### 2.5    Means for Implementation of the Plan.

The Plan will be funded by Yasuko's cash on hand, including amounts derived from (a) the liquidation of Yasuko's exempt and non-exempt assets; (b) her earned income; and (c) loans or gifts, in an amount of $1,725,000 to be held in Yasuko's counsel's attorney trust account no later than October 10, 2023 for distribution on the Effective Date and future earnings. Yasuko asserts such amounts are more than Yasuko's projected disposable income during the three (3) years after Confirmation and more than the projected net proceeds of the liquidation of Yasuko's non-exempt assets.

### 2.6    Payments.

All distributions pursuant to the Plan, to the extent that it is confirmed consensually, will be remitted by Yasuko's counsel pursuant to 11 U.S.C. § 1191(a). However, to the extent that the

plan is confirmed pursuant to 11 U.S.C. § 1191(b) the Subchapter V Trustee shall make the distributions under the Plan.

**2.7    Post-Confirmation Management.**

The Post-Confirmation management of Yasuko's assets shall be vested in the Yasuko as follows:

| Name |
| --- |
| Yasuko Negita – to the extent of her owned assets and income |
| |

**2.8    Tax Consequences.**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys and/or Advisors.*

## ARTICLE 3

## FEASIBILITY OF PLAN

The Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Yasuko or any successor to Yasuko, unless such liquidation or reorganization is proposed in the Plan.

**3.1    Ability to Initially Fund Plan.**

The Plan is contingent upon having $1,725,000, derived from (a) the liquidation of Yasuko's exempt and non-exempt assets; (b) her earned income; and (c) loans or gifts, in Yasuko's counsel's attorney trust account not later than October 10, 2023 to fund payments required on the Effective Date. Yasuko believes that she will have enough cash on hand and income from Kuraku NYC after the Effective Date of the Plan to pay any remaining claims due after the Effective Date. A chart showing the amount of cash that will be on hand the Effective Date of the Plan is attached hereto as Exhibit "A."

**3.2    Ability to Make Future Plan Payments and Operate Without Further Reorganization.**

Yasuko must distribute all or such portion of her future earnings after the Effective Date as is necessary for the execution of the Plan.

Yasuko has provided income and expense projections annexed hereto as Exhibit "B" which show that she will have sufficient cash flow to fund the remaining Plan payments, to wit, payments on priority tax claims and to her retained professionals.

13

## ARTICLE 4

### LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit "C." The liquidation analysis demonstrates that a liquidation of the Yasuko's assets will generate no greater distributions for any party, and thus the Plan satisfies what is known as the "best interests test."

## ARTICLE 5

### DISCHARGE

**5.1** **Discharge.**

**If the Plan is confirmed under § 1191(a)**, on the Effective Date of this Plan, Yasuko will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b)**, as soon as practicable after completion by Yasuko of all payments due under the Plan and distribution of such amounts by the Subchapter V Trustee, unless the Court approves a written waiver of discharge executed by Yasuko after the order for relief under this chapter, the Court shall grant Yasuko a discharge of all debts provided in section 1141(d)(l)(A) of this title, and all other debts allowed under Section 503 of the Code and provided for in this Plan, except any debt.

(1)     on which the last payment is due after the first 3 years of the Plan, or such other time not to exceed 5 years fixed by the Court; or

(2)     if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6

### GENERAL PROVISIONS

**6.1** **Title to Assets.**

If the Plan is confirmed under § 119l(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) upon the Effective Date of the Plan all of the remaining property of the estate vests in Yasuko; and (ii) after the Effective Date of the Plan, the property dealt with by the Plan which is retained Yasuko is free and clear of all Claims,  Equity Interests and encumbrances of Creditors, equity security holders, and of general partners of Yasuko, including, but not limited to, any such claims, interests or encumbrances on behalf of the creditors receiving payments pursuant to this Plan, including those in Japan.

If the Plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that Yasuko acquires, as well as earnings from services performed by Yasuko, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in §1185 of the Bankruptcy Code, the Plan, or the Order confirming the Plan, Yasuko shall remain in possession of all property of the estate.

### 6.2    Binding Effect.

If the Plan is confirmed and the Effective Date shall have occurred, the provisions of the Plan will bind Yasuko and all Creditors, whether or not they accept the Plan. The rights and obligations of any person and/or entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors, heirs, estate, or assigns of such person and/or entity. If the Effective Date (approximately November 7, 2023) does not occur, the Plan shall be deemed null and void and shall have no further force and effect.

### 6.3    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan, including, but not limited to, disputes relating to the disposition of estate property, both in the United States and in Japan, by Yasuko; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases.

### 6.5    Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6    Modification of the Plan.

Yasuko may modify the Plan at any time before Confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan, before confirming an amended Plan.

If the Plan is confirmed under Section 1191(a), Yasuko may also seek to modify the Plan at any time after Confirmation only if (1) the Effective Date of the Plan has not occurred, (2) upon consent of the Judgment Creditors, which consent they may withhold on their sole discretion, and (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), Yasuko may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the Court, (2) upon consent of the Judgment Creditors, which consent they may withhold on their sole discretion, if the Effective Date of the Plan has not occurred, and (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7    Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, Yasuko, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### ARTICLE 7

### ATTACHMENTS

The following documents accompany the Plan:

  A.  Tables showing the amount of cash on hand as of the Effective Date, are annexed as Exhibit "A."

  B.  A Projection of Yasuko's income and expenses during the three-year Plan period is annexed as Exhibit "B."

  C.  A Liquidation Analysis is annexed as Exhibit "C."

### ARTICLE 8

### FREQUENTLY ASKED QUESTIONS

**What is Yasuko Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for Yasuko, the Bankruptcy Court may confirm the Plan as proposed by Yasuko.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by Yasuko. If you do

not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, Yasuko and all of her creditors are bound by the terms of the Plan. If the Plan is not confirmed, Yasuko may not pay creditors as proposed in the Plan while Yasuko remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of Yasuko whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by Yasuko and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Article 2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is October 17, 2023. Ballots should be mailed to the following address: Barry J. Roy, Esq., Rabinowitz, Lubetkin & Tully, LLC, 293 Eisenhower Parkway, Suite 100, Livingston, New Jersey 07039, broy@rltlawfirm.com.

**How Do I Determine When and How Much I Will Be Paid?** On pages 9 through 11, Yasuko has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9

## DEFAULT PROVISIONS AND REMEDIES

Upon the Effective Date of the Plan, the Plan becomes a contract between the Yasuko and all of her constituent creditors. To the extent there is a default by Yasuko on a post-Effective Date basis; Creditors' remedies shall include the institution of a lawsuit asserting a breach of contract

claim against Yasuko in a court of appropriate jurisdiction. Such remedies shall also include moving in the Bankruptcy Court to compel compliance and other appropriate relief available under the Bankruptcy Code including, but not limited to, compelling payment of the amount due or conversion or dismissal of the case, which may be brought by motion.

To the extent that the Effective Date of the Plan (approximately November 7, 2023) does not occur, the Plan shall be deemed null and void.

## ARTICLE 10

### DEFINITIONS

**10.1**    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**10.2**    **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**10.3**    **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving Yasuko's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by Yasuko, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtors' estate under Chapter 123, Title 28, United States Code.

**10.4**    **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**10.5**    **Allowed Claim**: Any claim against Yasuko pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed, was filed late with leave of the Bankruptcy Court or without objection by the Debtors, or allowed pursuant to the Plan and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**10.6**    **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which Yasuko shall be entitled on the Confirmation Date.

**10.7**    **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Yasuko's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

18

**10.8    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which Yasuko shall be entitled on the Confirmation Date.

**10.9    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**10.10    Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**10.11    Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**10.12    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than Yasuko, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**10.13    Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Masahiko Negita and Yasuko Negita are Debtors-in-Possession.

**10.14    Claim**: Any "right to payment from Yasuko whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from Yasuko, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**10.15    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**10.16    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**10.17    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**10.18    Confirmation Hearing**: The hearing to be held on October 24, 2023 to consider confirmation of the Plan.

**10.19    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code that is acceptable to the Judgment Creditors.

**10.20    Creditor**: Any person who has a Claim against Yasuko that arose on or before the Petition Date.

19

**10.21  Debtors** and **Debtors-in-Possession**: Masahiko Negita and Yasuko Negita, the debtors-in-possession in this Chapter 11 Case.

**10.22  Disputed Claim:** Any claim against Yasuko pursuant to Section 502 of the Code that Yasuko has in any way objected to, challenged or otherwise disputed.

**10.23  Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**10.24  Effective Date**: The date upon which (a) the Judgment Creditors are paid $1,560,000, (b) SDNY Chapter 7 Trustee shall be paid (i) the amount of $69,156.02 plus the amount of all claims filed to and through October 20, 2023 the claims bar date in the RYI and Maki bankruptcy cases, and (ii) the amount of $12,072.90 for payment of the claim filed by the Small Business Administration ("SBA") in the RYI bankruptcy case, and (c) the SBA is paid $12,072.90 provided that all payments must occur no later than 14 days after execution and entry of the Confirmation Order (approximately November 7, 2023), unless, consistent with 10.17, there is a stay pending appeal, or otherwise agreed to by the Judgment Creditors.

**10.25  Equity Interest**: An ownership interest in the Yasuko.

**10.26  Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**10.27  Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**10.28  General Unsecured Claim**: An Unsecured Claim.

**10.29  General Unsecured Creditor**: A Creditor holding an Unsecured Claim.

**10.30  IRC**: The Internal Revenue Code.

**10.31  Judgment Creditors**: Ornrat Keawsri, Sachina Nagae, Takayuki Sekiya, Siwapon Topon, Pimparat Ketchatrot, Thiratham Raksuk, Parichat Kongtuk, Tanon Leechot, Thanatharn Kulaptip, Wanwisa Nakwirot, Natcha Natatpisit, and Parada Mongkolkajit, all of whom obtained a judgment against, among others, Yasuko and Masahiko, who are jointly and severally liable for the entire judgment that exceeds $1.8 million, in the District Court Action .

**10.32  Petition Date**: March 23, 2023, the date the Chapter 11 Petition for relief was filed.

**10.33  Plan**: This Plan of Reorganization for Yasuko Negita, either in its present form or as it may be altered, amended, or modified from time to time

**10.34  Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**10.35   Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtors with the Bankruptcy Court listing liabilities and assets.

**10.36   SDNY Chapter 7 Trustee**:  Alan Nisselson, as trustee for the chapter 7 estates of Ramen-Ya Inc. (Case No. 23-1079-mg) and  Maki (Case No. 23-10978-mg) currently pending in the United States Bankruptcy Court for the Southern District of New York.

**10.37   Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtors.

**10.38   Subchapter V Trustee**: Nancy Isaacson, Esq., the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. § 1183(b), the Plan, or the order confirming the Plan.

**10.39   Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

## ARTICLE 11

### TREATMENT OF UNSECURED CREDITORS, INCLUDING, CLAIMS HELD BY JUDGMENT CREDITORS AND THE SDNY CHAPTER 7 TRUSTEE FOR MAKI AND RAMEN-YA INC.

The following constitutes the terms of a settlement by and among Yasuko,  the Judgment Creditors and the SDNY Chapter 7 Trustee for  Maki[4], an individual, and RYI.[5] The terms of the settlement provide for, among other things, the ability for Yasuko to confirm her plan of reorganization pursuant to 11 U.S.C. § 1191 (a) or (b). The pertinent terms of the settlement, which are included in the Plan and will be incorporated in the Confirmation Order, are as follows:

(1)      Yasuko will pay, on or about the Effective Date, to her unsecured creditors, including the Judgment Creditors and the SDNY Chapter 7 Trustee a total a $1,725,000 (the "Settlement Amount"), as follows: (a) $1,560,000 to the Judgment Creditors, (b) to the SDNY Chapter 7 Trustee, on behalf of the Chapter 7 bankruptcy estates of Maki and RYI, (i) $69,156.02 plus the amount of all claims filed in the RYI and Miho Maki bankruptcy cases to and through

---

[4] Maki filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York on June 23, 2023, Case No. 23-10978 (MG). Nisselson was appointed as Maki's Chapter 7 trustee on June 23, 2023. Based on the existing judgment in favor of the Judgment Creditors, upon motion by the Judgment Creditors, Judge Liman withdrew the reference with respect to certain issues.

[5] RYI filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York on June 23, 2023, Case No. 23-10979 (MG). Nisselson was appointed as RYI's Chapter 7 trustee on June 23, 2023. Based on the existing judgment in favor of the Judgment Creditors, upon motion by the Judgment Creditors, Judge Liman withdrew the reference with respect to certain issues.

October 20, 2023 the claims bar date[6], and (ii) the amount of $12,072.90 for payment on the claim filed by the SBA in the RYI bankruptcy case, (c) $15,000 to Nancy Isaacson, Esq., Subchapter V Trustee for the Debtors,[7] and (d) $30,000 to 133 6th McDougal (the "Landlord"), the former landlord for RYI on behalf of the tenant RYI and Yasuko, as alleged guarantor of that debt.[8]

(2)     The Judgment Creditors' claims against Yasuko shall not be discharged if Judgment Creditors are not paid $1,560,000 on or before the Effective Date (approximately November 7, 2023).

(3)     In exchange for payment of the Settlement Amount, the Judgment Creditors and the SDNY Chapter 7 Trustee have agreed, as follows: (a) to withdraw their motions (i) pursuant to CPLR 5225 for fraudulent transfer of funds by RYI and Y&S to Kil S. Jung (the accountant that has provided accountancy services to the Negitas, RYI, Y&S, Maki, and Kuraku NYC since at least 2014) and by Maki to Haruna Maki, and (ii) pursuant to CPLR 5228 for appointment of a receiver to oversee the management of Kuraku NYC currently pending before Judge Liman in the Southern District of New York and their motions currently pending before the United States Bankruptcy Court, District of New Jersey, (b) release any and all liens, judgments, encumbrances and claims pending against the Debtors, Maki, RYI and Kuraku NYC, including any liens, claims and encumbrances in Japan[9], (c) the Judgment Creditors will consent to and vote in favor of the Plan as a consensual plan, (d) the Judgment Creditors will not object to the Debtors' discharges, either in the current or future bankruptcy and Maki's discharge, nor will they cause or solicit any other party to object to the discharges of the Debtors or Maki, nor will they support any objection to discharge filed by any other party, (e) the Judgment Creditors will not object to the dismissal of Masahiko's Subchapter V Chapter 11 bankruptcy, nor will they cause or solicit any other party to object to dismissal of Masahiko's Subchapter V Chapter 11 bankruptcy, nor will they support any objection to the dismissal of Masahiko's Subchapter V Chapter 11 bankruptcy filed by any other party; and (f) the Judgment Creditors and the SDNY Chapter 7 Trustee will issue general releases in favor of Yasuko and Masahiko Negita, the Negitas' daughters, Saori, Naomi and Reika, Maki, Haruna Maki, Ramen-Ya Inc. and Kuraku NYC (the "Released Parties"). The Released Parties shall prepare the required documentation to be filed with the government entities where Judgment Creditors have registered their judgment, lien or encumbrance and file the same at their own cost. Judgment Creditors shall cooperate with them by executing the required documents.

---

[6] Yasuko reserves the right, to the extent possible, to object to and/or negotiate a reduction of any such claim(s).

[7] This disbursement is subject to Ms. Isaacson's application for compensation and approval by the Bankruptcy Court. The proposed amount is only an estimate (following discussions with Ms. Isaacson).

[8] The Landlord is an unsecured creditor in the bankruptcy cases of Yasuko and RYI. Yasuko reserves the right, to the extent possible, to object to and/or negotiate a reduction of the Landlord's claim.

[9] Including, but not limited to, cooperating, to the extent necessary, in the liquidation of Yasuko's assets.

Unless otherwise set forth in the Plan, pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including with respect to issues related to the value of Yasuko's unencumbered property, or relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interests may have with respect to any Claim or Interest, or any Distribution to be made on account of a Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of Yasuko, her Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date. Yasuko may compromise and settle Claims against Yasuko and her Estate.

## EXHIBIT A

## PROJECTIONS OF CASH ON HAND

| | |
|---|---|
| Projected Cash on hand on the Effective Date: | $      1,751,000 |
| Amount of Administrative Expenses Payable on Effective Date of Plan | $      15,000 |
| Amount of statutory costs and charges | $            0 |
| Amount of cure payments for executory contracts due on Effective Date | $            0 |
| Other Plan Payment due on Effective Date | $      1,671,228.92 |
| Balance after paying these amounts | $      64,771.08 |

The sources of the cash Yasuko will have on hand by the Effective Date are estimated as follows:

| | |
|---|---|
| $61,121 | Cash in Yasuko's bank account now |
| +$1,693,979 | Additional cash Yasuko will accumulate from net earnings between now and Effective Date |

24

# EXHIBIT B

Mrs. Negita
3 year cash flow forecast
Plan of Reorganization

| | | | Year 1 | Year 2 | Year 3 | Total |
|---|---|---|---|---|---|---|
| 1 | Net Pay | | 66,144 | 66,144 | 66,144 | 198,432 |
| 2 | Other income | (i) | 45,000 | 45,000 | 45,000 | 135,000 |
| 3 | | | | | | |
| 4 | Cash collections | A | 111,144 | 111,144 | 111,144 | 333,432 |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | Home owners, renters insurance | | 700 | 700 | 700 | 2,100 |
| 8 | Home maintenance, repairs and upkeep | | 600 | 600 | 600 | 1,800 |
| 9 | Utilities | | 3,300 | 3,300 | 3,300 | 9,900 |
| 10 | Food and housing supplies | | 3,000 | 3,000 | 3,000 | 9,000 |
| 11 | Clothing, laundry, dry cleaning | | 600 | 600 | 600 | 1,800 |
| 12 | Personal care products | | 300 | 300 | 300 | 900 |
| 13 | Medical and dental expense | | 300 | 300 | 300 | 900 |
| 14 | Auto Insurance | | 1,200 | 1,200 | 1,200 | 3,600 |
| 15 | Entertainment, clubs, recreation | | 300 | 300 | 300 | 900 |
| 16 | Auto lease | | 5,616 | 5,616 | 5,616 | 16,848 |
| 17 | Health/Life Insurance | | 4,032 | 4,032 | 4,032 | 12,096 |
| 18 | Telephone | | 1,800 | 1,800 | 1,800 | 5,400 |
| 19 | Housing (Rent/mortgage) | (II) | 36,000 | 37,800 | 39,690 | 113,490 |
| 20 | Household items | | | | | - |
| 21 | Medical | | 2,400 | 2,400 | 2,400 | 7,200 |
| 22 | Auto expense- fuel | | 2,400 | 2,400 | 2,400 | 7,200 |
| 23 | Repairs | | - | - | - | - |
| 24 | | | | | | |
| 25 | Total Cash Disbursements | B | 62,548 | 64,348 | 66,238 | 193,134 |
| 26 | | | | | | |
| 27 | Operating Cash Flow | C=A-B | 48,596 | 46,796 | 44,906 | 140,298 |
| 28 | | | | | | |
| 29 | Bankruptcy Plan Payments: | | | | | |
| 30 | | | | | | |
| 31 | Professional Fees | | 43,333 | 43,333 | 43,333 | 130,000 |
| 32 | Priority Tax Claim | | 6,449 | 6,449 | 6,449 | 19,347 |
| 33 | | | | | | |
| 34 | Total Bankruptcy Plan Payments | D | 49,782 | 49,782 | 49,782 | 149,347 |
| 35 | | | | | | |
| 36 | | | | | | |
| 37 | Cash, beginning | (iii) E | 26,000 | 24,814 | 21,827 | 26000 |
| 38 | | | | | | |
| 39 | Cash, ending | F=C-D+E | 24,814 | 21,827 | 16,951 | 16,951 |

(i)  assumes shareholder distributions from her company
(ii) assumes residence sold prior to effective date
(iii) includes net proceeds from sale of home

**EXHIBIT C**

Yasuko Negita, Debtor
Liquidation Analysis                                                                                      P

|  |  | A | B | =A+B |  | Liquidation Value | | |
|---|---|---|---|---|---|---|---|---|
|  |  | Fair Market Value | Exemption | Net Assets | High | Medium | Low | Hybrid |
| 1 | Principal residence | 1,188,000 | (29,375) | 1,158,625 | 1,158,625 | 1,158,625 | 1,158,625 | 1,158,625 |
| 2 |  |  |  |  |  |  |  |  |
| 3 | Jointly owned Property - 8-53-2 Tateishi Katsushika, KLI Tokyo, Japa | 110,858 |  | 110,858 | 83,144 | 55,429 | 27,715 | 55,429 |
| 4 |  |  |  |  |  |  |  |  |
| 5 | Lexus RX 350 | 43,000 | (4,450) | 38,550 | 27,800 | 17,050 | 6,300 | 17,050 |
| 6 |  |  |  |  |  |  |  |  |
| 7 | Furniture and fixtures | 2,500 | (2,500) | - | - | - | - | - |
| 8 |  |  |  |  |  |  |  |  |
| 9 | Home Electronics | 1,500 | (1,500) | - | - | - | - | - |
| 10 |  |  |  |  |  |  |  |  |
| 11 | Wearing apparel | 500 | (500) | - |  |  |  |  |
| 12 |  |  |  |  |  |  |  |  |
| 13 | Jewelry | 5,000 | (3,750) | 1,250 | 1,250 | - | - | - |
| 14 |  |  |  |  |  |  |  |  |
| 15 | Cash and investments | 61,121 |  | 61,121 | 61,121 | 61,121 | 61,121 | 61,121 |
| 16 |  |  |  |  |  |  |  |  |
| 17 | Loan receivable- due from family member in Japan | 106,438 |  | 106,438 | 79,829 | 53,219 | 26,610 | 53,219 |
| 18 |  |  |  |  |  |  |  |  |
| 19 | Life insurance - NY Life | 19,465 | (13,400) | 6,065 | 6,065 | 6,065 | 6,065 | 6,065 |
| 20 |  |  |  |  |  |  |  |  |
| 21 | IRA - Merrill Lynch | 163,295 | (163,295) | - | - | - | - | - |
| 22 |  |  |  |  |  |  |  |  |
| 23 | Other business interests | 63,848 | - | 63,848 | 47,886 | 31,924 | 15,962 | 31,500 |
| 24 |  |  |  |  |  |  |  |  |
| 25 |  |  |  |  |  |  |  |  |
| 26 | Total Collections |  |  |  | 1,417,833 | 1,351,509 | 1,286,435 | 1,351,509 |
| 27 |  |  |  |  |  |  |  |  |
| 28 | Less: |  |  |  |  |  |  |  |
| 29 | Secured debt |  |  |  | (312,635) | (312,635) | (312,635) | (312,635) |
| 30 |  |  |  |  |  |  |  |  |
| 31 | Chapter 11 administrative claims |  |  |  |  |  |  |  |
| 32 |  |  |  |  |  |  |  |  |
| 33 | Post-petition payables |  |  |  | (2,500) | (2,500) | (2,500) | (2,500) |
| 34 | Bankruptcy professionals |  |  |  | (125,000) | (125,000) | (125,000) | (125,000) |
| 35 |  |  |  |  |  |  |  |  |
| 36 | Priority claims |  |  |  | (31,245) | (31,245) | (31,245) | (31,245) |
| 37 |  |  |  |  |  |  |  |  |
| 38 |  |  |  |  |  |  |  |  |
| 39 | Net Asset Value Before Cost of Liquidation |  |  |  | 1,142,604 | 1,032,458 | 924,813 | 1,032,034 |
| 40 |  |  |  |  |  |  |  |  |
| 41 | Cost of Liquidation |  |  |  |  |  |  |  |
| 42 |  |  |  |  |  |  |  |  |
| 43 | Chapter 7 professional fees- legal and accounting |  |  |  | (85,000) | (85,000) | (85,000) | (85,000) |
| 44 |  |  |  |  |  |  |  |  |
| 45 | Chapter 7 Trustee fees |  |  |  | (64,549) | (62,449) | (60,229) | (62,449) |
| 46 |  |  |  |  |  |  |  |  |
| 47 | Other Chapter 7 administrative costs- real estate commissions |  |  |  | (62,088) | (60,703) | (59,317) | (60,703) |
| 48 |  |  |  |  |  |  |  |  |
| 49 | Net available for distribution to General Unsecured Creditors |  |  |  | 930,966 | 824,306 | 720,267 | 823,882 |

Footnotes:

(i)      Liquidation value is based on gross liquidation value less the claimed exemption amount

(ii)     The high, medium and low scenarios are based on 75%, 50% and 25% asset valuation for liquidation purposes of
         all assets but for the principal residence and the liquid assets, including life insurance

(iii)    Other business interests include a  35% interest in a family owned Japanese manufacturing co
         and a 90% interest in a small NYC restaurant